The appeal is dismissed.                    *Appeal dismissed.*

---

OWEN F. ALDIS *et al.*

*v.*

THE SOUTH PARK COMMISSIONERS.

*Opinion filed February 14, 1898.*

1. PARKS—*selection of street by commissioners, and improvement of same, are distinct proceedings.* The selection of a street by park commissioners for improvement, as authorized by the act of 1895, (Laws of 1895, p. 290,) and the improvement of such street after its selection, are distinct proceedings.

2. SAME—*street passes under control of commissioners on completing proceedings for its selection.* Upon the completion of proceedings for the selection of a street, by park commissioners, for improvement, such street passes at once under their control and police system.

3. SAME—*legality of selection of street should be questioned by quo warranto.* The legality of the action of park commissioners in selecting a street for improvement may be questioned by *quo warranto* proceedings, but cannot be attacked in proceedings by the commissioners to levy an assessment for improving such street.

4. SAME—*commissioners levying assessment need not show that street was legally selected.* Park commissioners, upon levying an assessment to improve a street selected by them under the act of 1895, (Laws of 1895, p. 290,) need not show affirmatively that they obtained the consent of the city council and of the majority of the abutting owners before selecting such street for improvement. (*Thorn* v. *West Chicago Park Comrs.* 130 Ill. 594, distinguished.)

5. SAME—*notice of application for confirmation need be published but once.* Section 3 of the Park act of 1871, (Rev. Stat. 1874, p. 735,) which provides that the notice of application for confirmation of a special assessment for park purposes shall be published "at least ten days" before the time named for the application, does not re-

quire such notice to be published for ten successive days. A single publication ten days before the application is sufficient.

6. APPEALS AND ERRORS—*allegations of assessment petition presumed proven, in absence of bill of exceptions.* An allegation in a special assessment petition by park commissioners, that the commissioners had selected a certain street within their district, describing its location, and had thereafter passed an ordinance for its improvement by converting it into a boulevard, will be presumed, on appeal, to have been proven, in the absence of a bill of exceptions.

7. SPECIAL ASSESSMENTS—*what will not vitiate estimate of cost.* An ordinance passed by park commissioners for converting a street into a boulevard, which provides that the old paving blocks be sold to the highest bidder and the proceeds applied on the new improvement, does not require that such blocks be sold and the proceeds credited before estimating the cost of the new improvement.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

This is a writ of error sued out by plaintiffs in error to reverse a judgment of the circuit court of Cook county confirming a special assessment levied by the South Park Commissioners, defendants in error, to pay for the improvement of a portion of Jackson street, in the city of Chicago, which was then and there, as claimed by defendants in error, under the jurisdiction of the park commissioners.

It is alleged in the petition that on the 18th day of November, 1896, petitioners, the South Park Commissioners, did select and take Jackson street, from the east line of the Chicago river to the east line of Michigan avenue, in the town of South Chicago, in the city of Chicago, in the South Park district, in the county of Cook and State of Illinois; that thereafter, on the 16th day of December, 1896, the South Park Commissioners passed an ordinance for the first improvement of so much of said street, for the purpose of converting it into a boulevard, excepting that part of the street immediately in front of the United States government buildings; that subsequently, and on the 16th day of December, 1896, the said

commissioners estimated the cost of the improvement, in accordance with the terms of the ordinance, at the sum of $166,029.60; that thereupon said commissioners gave notice, by publication in the *Daily Inter-Ocean*, that they would, on the 13th day of January, 1897, at their office in the Refectory building in Washington Park, at the hour of 2:30 o'clock in the afternoon, proceed to levy a special assessment on the property benefited, at which time all parties interested might appear and be heard; that said notice was published for twelve successive days, to-wit, twelve times, in said *Daily* and *Sunday Inter-Ocean*, the date of the first paper containing said notice being the 31st day of December, 1896, and the date of the last paper being the 11th day of January, 1897; that said commissioners met at the appointed time and place, found the benefits equal to the cost of the improvement, made out the roll, signed the same, and afterwards, on, to-wit, the 27th day of January, 1897, returned and filed the same with the clerk of the circuit court of Cook county; that the roll as made and returned contains a correct list of the land benefited, the estimated value thereof, the amount of the assessment, the description of the lands as shown of record on the 13th day of January, 1897, and that the assessment was made in proportion to benefits; that the improvement is in the town of South Chicago, in the South Park district, in the city of Chicago, county of Cook, and in fractional sections 15 and 16, in township 39, north, range 14, east, etc.; wherefore the commissioners pray for confirmation of the assessment, and for such other proceedings in and about the matter as may be proper.

Notice was given that on February 10, 1897, at ten o'clock A. M., the commissioners would apply to the circuit court for confirmation of the assessment. Plaintiffs in error did not appear and they were defaulted, and a judgment of confirmation was rendered against their property for $5633.20,—the amount assessed upon it.

FREDERIC F. NORCROSS, and GEORGE A. MASON, for plaintiffs in error:

The commissioners were without power or jurisdiction to make the assessment. The consents of the city council and of a majority of the property owners were not first obtained, as provided by law. These are jurisdictional facts, which must appear affirmatively of record in proceedings of this character. Such facts will not be presumed. *Thorn* v. *Park Comrs.* 130 Ill. 594; *Ayer* v. *Town of Lake*, 11 Ill. App. 564; *Kneeland* v. *Milwaukee*, 18 Wis. 431; Freeman on Judgments, secs. 122, 123; *Corley* v. *Kennedy*, 28 Ill. 143; *Highway Comrs.* v. *Harper*, 38 id. 104; *Chicago* v. *Railroad Co.* 20 id. 286; *Chicago* v. *Wright*, 32 id. 192; *Mix* v. *Ross*, 57 id. 121; *Scanlon* v. *Chicago*, 40 id. 146; *Waller* v. *Chicago*, 53 id. 88; *Commissioners* v. *Keith*, 2 Barr, 218; *Rich* v. *Chicago*, 58 Ill. 298; *People* v. *Otis*, 74 id. 384; *Ogden* v. *Lake View*, 121 id. 422; *Murphy* v. *Peoria*, 119 id. 509; *Springer* v. *Chicago*, 159 id. 515; *Morrison* v. *Chicago*, 142 id. 660; *Mulligan* v. *Smith*, 59 Cal. 206; Cooley on Taxation, (2d ed.) 464; Blackwell on Tax Titles, 39; *Henderson* v. *Baltimore*, 8 Md. 352; *Sharp* v. *Spier*, 4 Hill, 76; *Carron* v. *Martin*, 26 N. J. L. 594; *Matter of Buffalo*, 78 N. Y. 362; *Voorhees* v. *Bank*, 10 Pet. 193; *Holland* v. *Baltimore*, 11 Md. 186.

The notice of application for confirmation was insufficient to confer jurisdiction of the parties. The requirement of the statute that at least ten days' notice should be given, contemplates a publication for ten successive days. The notice stands in lieu of process, and should be continuous. *Washington* v. *Bassett*, 15 R. I. 563; *Armstrong* v. *Scott*, 3 G. Greene, 433; *Leffler* v. *Armstrong*, 4 Iowa, 482; *Stine* v. *Wilkson*, 10 Mo. 175; *Farrar* v. *Payne*, 73 Ill. 82; *Kellogg* v. *Carrico*, 47 Mo. 157; *Waller* v. *Chicago*, 53 Ill. 88.

Where the jurisdiction depends upon special statutes conferring an authority in derogation of common law, and specifying the manner in which the authority shall be exercised, all the requirements of the statute must be observed. And this must appear affirmatively on the face

of the record.     The rule in this respect is the same as in courts not of record.     Freeman on Judgments, secs. 122, 123; *Kneeland* v. *Milwaukee,* 18 Wis. 431; *Chicago* v. *Railroad Co.* 20 Ill. 286; *Scanlon* v. *Chicago,* 40 id. 146; *Mix* v. *Ross,* 57 id. 121; *Springer* v. *Chicago,* 159 id. 515; *Corley* v. *Kennedy,* 28 id. 143; *Highway Comrs.* v. *Harper,* 38 id. 104.

GREEN, ROBBINS & HONORE, for defendants in error.

Mr. JUSTICE CRAIG delivered the opinion of the court:

Section 1 of "An act to enable park commissioners or park authorities to take, regulate, control and improve public streets," etc., (Laws of 1895, p. 290,) provides: "That every board of park commissioners or park authorities shall have power to connect any public park, boulevard or driveway under its control with any part of any incorporated city, town or village, by selecting and taking any connecting street or streets, or parts thereof, leading to such park, boulevard or driveway, and shall also have power to accept and add to any parks or park under their control any street, or parts thereof, which adjoins or runs parallel with any boundary line of the same: *Provided,* that the streets so selected and taken, so far as taken, shall lie within the district or territory the property of which shall be taxable for the maintenance of such parks, boulevard or driveway: *And provided, further,* that the consent of the corporate authorities having control of any such street or streets, so far as selected and taken, and also the consent in writing of the owners of a majority of the frontage of the lots and lands abutting on such streets, so far as taken, shall be first obtained."

It does not affirmatively appear from the record in this case that the park commissioners, before selecting and taking Jackson street as a part of the park, obtained the consent of the corporate authorities of the city of Chicago and the consent in writing of the owners of a majority of the frontage of lots and lands abutting on the street.     It

may be conceded that the park commissioners could not select and take control of Jackson street unless they followed and observed the steps prescribed by the statute, —that they could not do so without first obtaining the consent of the corporate authorities of the city of Chicago and also the consent in writing of the owners of a majority of the frontage of the lots and lands abutting on the street. But the acquiring of Jackson street may be regarded as one thing, while the proceeding to pave Jackson boulevard is another and a different thing. The park commissioners finished one complete proceeding when they took Jackson street. Upon the completion of that proceeding as prescribed by the statute the street at once came under the control and police system of the park commissioners. If doubt existed in regard to the legality of the action of the commissioners under which the street was acquired, *quo warranto* proceedings might be instituted to test the action of the park commissioners, as was done in *People* v. *Walsh*, 96 Ill. 232, where the proceedings under which the commissioners acquired Michigan avenue were called in question. But no proceeding was instituted to test the action of the park commissioners, and they entered into the undisputed possession of the street, and in due time, when they determined to improve the street, it became necessary to institute a new proceeding,—one in no manner connected with the former one in which they acquired jurisdiction over the street. In this new proceeding the record should show that the commissioners have observed each step required by the statute to be followed in the levy of an assessment to pay for an improvement of a public street. But this is a different matter from that which would require the commissioners, when they inaugurate this new special assessment proceeding, to show, not only that they have taken the different steps required by the statute to make a valid assessment, but that they must go back beyond this proceeding, and show that they pursued the course required

by the statute under which they became clothed with authority over the street.

A city or incorporated town organized under the City and Village act, when it undertakes to levy an assessment or enforce an ordinance, is not required to go back and prove that the act was adopted by a vote of the people of the city or town, and for a like reason the South Park Commissioners, a municipal corporation, cannot be required, in a proceeding of this character, to show that it observed all the steps required by the statute in taking jurisdiction over Jackson street. In *Trumbo* v. *People*, 75 Ill. 561, it was held that a school tax cannot be resisted on the ground that the district levying the tax was illegally formed; that the only way in which the illegality of the formation of the district can be inquired into is by an information in the nature of a *quo warranto*. In *People* v. *Newberry*, 87 Ill. 41, it was held that on an application for judgment for delinquent school taxes it was not competent to determine the legality of the proceedings changing the boundaries of the school district; that where a part is attempted to be taken from one school district and added to another, the legality of the change can be tested only by *quo warranto* for attempting to exercise corporate powers over the newly added territory. The same doctrine was announced in *Blake* v. *People*, 109 Ill. 504. In *West Chicago Park Comrs.* v. *Sweet*, 167 Ill. 326, it was held that the question of the illegality of the proceedings under which the commissioners obtained control of the street could not be raised on an application to confirm a special assessment. It is among other things there said (p. 336): "A school tax cannot be resisted on the ground that the lands taxed were illegally annexed to a school district, but the only mode in which such illegality can be inquired into is by a direct proceeding, (citing the *Trumbo* and *Newberry cases.*) In case of annexation of territory to a city or village, such corporation is certainly not bound, for all time thereafter, to prove the

various steps for annexation and the regularity of the proceedings every time it arrests a person, makes a public improvement, levies a special assessment, enforces an ordinance, or does any other corporate act.  Such a requirement would be simply disastrous, and the idea could not be entertained for a moment.  When these streets were ceded to appellants they were taken into the park system, and there was a *de facto* corporation, including them.  Appellants will have a right to exercise their corporate powers over them until deprived of that right in some direct proceeding, and cannot be called upon to prove the regularity of the proceedings by which they became a part of the park system, in a collateral proceeding for the confirmation of a special assessment."

It is alleged in the petition "that the South Park Commissioners heretofore, to-wit, on the 18th day of November, 1896, did select and take Jackson street, from the east line of the Chicago river to the east line of Michigan avenue, in the town of South Chicago, in the city of Chicago, in the South Park district, in the county of Cook and State of Illinois, and thereafter, on, etc., said South Park Commissioners did pass an ordinance for the first improvement of so much of said Jackson street as is above described, for the purpose of converting said street into a boulevard."  In the absence of a bill of exceptions in the record it will be presumed that this allegation was proven on the hearing.  The fact that Jackson street was selected and taken by the South Park Commissioners was beyond controversy, and whether all the steps required by the statute were fully observed is a question which cannot be raised in this proceeding.

Much reliance is, however, placed in the argument in *Thorn* v. *West Chicago Park Comrs.* 130 Ill. 594.  In that case it was conceded it was necessary for the commissioners to prove the validity of the proceedings under which they acquired the street.  They alleged that they had obtained the consent of the city of Chicago and the consent of

the owners of a majority of the frontage abutting on the street, and this allegation they attempted to establish by the evidence.   The written consents of a certain number of property owners were introduced in evidence by the commissioners, and the principal question involved was in regard to the validity of these consents.   It was not suggested, nor was the question raised or decided, that the commissioners, on an application for the confirmation of an assessment, were required to prove that they had followed the steps required in taking the street, but the case was considered and passed upon as though the proceeding had been a *quo warranto* brought to test the right of the commissioners to exercise jurisdiction over the street.   We concur fully with what was said in that case, but the decision there cannot be regarded as an authority to compel the decision of the questions involved in this record.

It is next contended that the notice of application for confirmation was insufficient to confer jurisdiction on the court to enter judgment.   This position is predicated on the fact that the notice found on file, as shown by the certificate of publication attached to the notice, was published but once in a daily newspaper, and it is claimed the statute requires the notice to be published ten days in succession before the day of confirmation.   The statute provides (act of June 16, 1871, sec. 3,) that said commissioners shall give "at least ten days' notice" of the application for confirmation, "which said notice shall be published in one or more newspapers published in the county, * * * at least ten days before the time named for such application." Unless language other and different from that found in the section of the statute is to be incorporated into it, we think the obvious meaning of the section is that the notice shall be published once,—and that, ten days before the time named for the application. The legislature, in the enactment of the statute, no doubt understood the difference between ten days' notice and

ten successive days' notice, and if it had been intended
to require ten successive days' notice, language indicat-
ing that intention would have been incorporated in the
section before it was adopted. In other cases where the
legislature has intended that successive notices shall be
given it has so declared in plain words. Thus, in section
24 of article 9 of the City and Village act, where commis-
sioners have made an assessment, they are required to
give ten days' notice by posting and five successive days'
notice in a daily paper. So, also, in the Chancery and
Attachment acts notice to non-residents is required to be
published for a certain number of successive weeks. If,
therefore, it had been intended that the notice in ques-
tion should be published for ten successive days the leg-
islature would have so declared, as it has in other cases.

It is also contended that the estimate of the cost is
void, because made without first advertising for bids for
the sale of the old granite paving blocks and crediting the
proceeds on the cost of the improvement. The ordinance
provides that "the granite    *   *   *   paving blocks now
in the said driveway    *   *   *   shall first be removed
(that is, before the asphalt is laid,) and the granite blocks
sold to the highest bidder submitting proposal therefor in
answer to an advertisement,    *   *   *   and the proceeds
of said sale shall go towards paying the cost of the said
proposed improvement." We do not think that a reason-
able construction of the language used requires the blocks
to be sold before the assessment is made. We think the
terms of the ordinance will be complied with if, within a
reasonable time, the granite blocks are advertised and
sold for the highest price they will bring and the pro-
ceeds applied on the assessment.

The commissioners gave notice that they would meet
on January 13, 1897, at 2:30 o'clock in the afternoon, to
levy the assessment, and objection is made that the as-
sessment roll fails to show that the assessment was made
at that hour. We do not think it was necessary for the

assessment roll to show the hour that the commissioners met. It is alleged in the petition "that in pursuance of said notice said South Park Commissioners did, on the 13th day of January, 1897, at 2:30 o'clock in the afternoon, at their office in the Refectory building in Washington Park, in the said city of Chicago, proceed to estimate the value of the several lots, blocks and parcels of land." The default of plaintiffs in error admitted this allegation of the petition. Moreover, in the absence of a bill of exceptions it will be presumed that the evidence offered on the hearing fully proved the averment of the petition.

The judgment will be affirmed.

*Judgment affirmed.*