(May 4, 1907.)

# D. J. McGILVERY, Appellant, v. THE CITY OF LEWIS-TON et al., Respondents.

[90 Pac. 348.]

MUNICIPAL LAW—CITY CHARTER—SEWER DISTRICTS—SPECIAL ASSESS-MENTS—LIEN OF ASSESSMENT—PAYMENT OF ASSESSMENT IN IN-STALLMENTS—INTEREST ON INSTALLMENTS—BENEFITS RECEIVED FROM IMPROVEMENT—METHOD OF DETERMINING BENEFITS—AS-SESSMENT ON LOTS AND NOT ON IMPROVEMENTS—PUBLICATION OF NOTICE—SERVICES OF ENGINEER.

1. Under the provisions of section 75 of the charter of Lewis-ton (Sess. Laws 1903, p. 105), the city council have authority to create and organize sewer districts and to levy assessments against all the lots and tracts of land within such districts for the pay-ment of the expense of constructing sewer systems, such assess-ments to be levied ''in proportion to the benefits'' to be received by the respective lots and parcels of land so assessed.

2. In imposing and levying special assessments within a sewer district for the purpose of meeting and defraying the expense of constructing a sewer system therein, it is both just and equitable that such assessments be imposed upon the land itself and not upon the improvements thereon. In such case the real and substantial benefit derived is to the ''lots and parcels of land'' and not to the improvements thereon.

3. There is no absolute standard of certainty that can be em-ployed in arriving at the *benefits* to be received by any particular lot or parcel of land from the construction of a sewer or any other public improvement. Under the charter of the city of Lewiston (section 75), a determination of the manner and method of arriv-ing at the benefits to be derived by any lot or parcel of land is left to the judgment and determination of the city council, and if in their judgment the topography of the district, the value and utility of the lots in the different sections of that district, the facility with which they are to be served, the relative demand and urgency for the improvement, and their nearness to or remoteness from the business or residence portion of the district require or demand the segregation of the entire sewer district into separate and distinct classes or subdivisions for the purpose of reaching a just and equitable assessment with reference to *benefits,* then there can be no valid objection to their doing so.

4. Under the provisions of section 75 of the charter of Lewiston, it is competent for the city council to issue its sewer district warrants or bonds bearing interest at the rate of six per cent per annum, interest to be payable annually.

5. Where the city council have determined to make a sewer assessment payable in installments as authorized by the provisions of section 75 of their charter, and a property owner desires at any time to redeem his property from such assessment by paying the installments not yet due, he may do so by paying interest thereon to the date of payment of the installment.

6. Under the provisions of a city charter which provides that the. cost of constructing a sewer system shall be assessed ''on the lots and parcels of land benefited by any improvements in proportion to the benefits of said lots and parcels of land respectively,'' it is not necessary that the lots or parcels of land should abut on the sewer improvement in order to be subject to such assessment. It may not be benefited as much as property abutting on the sewer line, still, if within the district and capable of drainage by means of the improvement, it is subject to assessment in the proportion that the benefit it may receive shall bear to the benefits received by the other lots and parcels of land respectively, within the district.

7. Where the city council have determined to make the assessment payable in installments, they must make those installments equal.

8. Where a statute provides for the giving of ''twenty days' notice'' by publication in some newspaper, but does not specify any number of issues of the paper in which the notice shall be published, it is a sufficient compliance with the statute if the notice is published in one issue of the paper, and that publication occurs twenty days prior to the date of the meeting or other action of which the publication purports to give notice.

9. Where a city charter authorizes the creation of sewer districts and the levy of special assessments upon the lots and parcels of land to be benefited by the construction of a sewer system therein, and the statute provides that ''the funds raised by such assessment shall be applied solely toward the payment of such improvements and construction and the redemption of the warrants and bonds issued therefor,'' a levy of the assessment is all the appropriation necessary to be made in order to make the fund available for the payment of the indebtedness incurred by the construction of the sewer system.

10. The services of an engineer in making surveys, preparing estimates, maps and plats of the proposed sewer district and preparing plans and specifications for a proposed sewer improvement, is a proper and legitimate part of the necessary expense of con-

structing such sewer system, and the expense thereof may properly be included in the assessment levied on the property within such district for that purpose.

(Syllabus by the court.)

APPEAL from the District Court of Second Judicial District for the County of Nez Perce. Hon. Edgar C. Steele, Judge.

Action by the plaintiff to secure an injunction against the defendants proceeding with the construction of a sewer system and incurring the expenses necessary therefor. Judgment for the defendant, and plaintiff appealed. *Affirmed.*

Fred E. Butler, for Appellant.

The charter of the city contains no express provision authorizing the construction of these sewers otherwise than upon a city obligation, and to incur such an obligation the matter should have been submitted to a vote of the people as required by section 3 of article 8 of the constitution.

The legislature of Idaho, in 1901, expressly provided for the cities and villages in the state generally a means whereby they could issue obligations that are not city obligations and are limited solely to the lien of special assessments for their payment. (Laws 1901, p. 98.) This enactment shows a recognition in this state of the necessity of making such an express provision to authorize the incurring of such an obligation.

"The fact that the law creating a debt makes provision for a special tax to pay it does not limit the creditor's right of payment to the fund yielded by the special tax. He is a creditor of the municipality or other governmental division for the full amount of his debt, and is entitled to be paid in full, regardless of the amount yielded by the special tax, unless the contrary is expressly provided." (Gray on Limitations of Taxing Power and Public Indebtedness, sec. 2147; *United States v. Clark County,* 96 U. S. 211, 24 L. ed. 628; *United States v. Macon Co.,* 99 U. S. 582, 25 L. ed. 331; *Knox Co.*

*v. United States,* 109 U. S. 229, 27 L. ed. 914, 3 Sup. Ct. Rep. 131.)

Not only is there no express provision in the city charter that it shall not be liable upon these obligations, but there is express provision indicating that it is to be liable. In subdivision 5 of section 75 of the charter (Laws 1903, p. 141) it is provided, with reference to sales of property for these delinquent assessments, that: "The city of Lewiston shall have the right to bid in said property at the public sale herein provided for, and the certificate of sale shall be issued to said city."

Why would the city be given authority to bid at such sale if it were not personally liable for the obligation, for the payment of which the sale was being made? Why should the city bid and receive the certificates of sale unless to indemnify it for obligations it had assumed? There is not a case in the statutory history of the country where a city, county or other municipality has been authorized to bid at a tax sale in a case where it was not personally liable for the liabilities for the payment of which the tax was being raised.

The council has no power to issue a bond which does not provide for a liability equal in degree with that provided by the charter. (*Austin v. Seattle,* 2 Wash. 667, 27 Pac. 559; *United States v. Ft. Scott,* 99 U. S. 152, 25 L. ed. 348.)

There is no authority to assess the property of appellant and the other outlying lots which are not connected with the main sewer or any of the laterals thereof. (*Vreeland v. Mayor,* 58 N. J. L. 126, 32 Atl. 68; *In re Park Ave. Sewer,* 169 Pa. St. 433, 32 Atl. 574; *In re Sewer on Beachwood Ave.,* 179 Pa. St. 490, 36 Atl. 209; *Whitman v. City of Reading,* 169 Pa. St. 375, 32 Atl. 576; *Hanscom v. City of Omaha,* 11 Neb. 37, 7 N. W. 739.)

They can be assessed only for the benefit and advantage which they will derive from the improvement, over and above their loss and damage; and such benefit and damage ought not to be speculative and distant, depending upon remote and uncertain contingencies, but it should be substantial, certain and capable of being realized within a reasonable and

convenient time. (*Matter of Fourth Ave.,* 20 N. Y. Com. Law, 452; *City of Atchison v. Price,* 45 Kan. 296, 25 Pac. 605; *In re Morewood Ave.,* 159 Pa. St. 20, 28 Atl. 123, 132; *City of Chicago v. Adcock,* 168 Ill. 221, 48 N. E. 155; *Thomas v. Grain,* 35 Mich. 154, 24 Am. Rep. 535; *New York Ry. Co. v. New Haven,* 42 Conn. 279, 19 Am. Rep. 534; *State v. Elizabeth,* 40 N. J. L. 274.)

What are considered benefits: Abbott on Municipal Corporations, p. 843, sec. 348; *McKivitt v. Hoboken,* 45 N. J. L. 482; *Taylor v. Palmer,* 31 Cal. 240; *People v. City of Brooklyn,* 23 Barb. 166; *Bowles v. Biddinger Co.,* 6 Ohio Dec. 871.

Eugene A. Cox, for Respondents.

The legislature has provided two independent methods for the construction of special improvements, and has left to the discretion of the council the determination of whether a given improvement is general or special. This is very common in city charters. (Boise Charter, 1907, cc. 10, 11; Lewiston Charter, 1907; Freeholders' Charter of Spokane, Act of March 24, 1890.)

Whenever the council has determined that the improvement is local in its nature, so that proceedings must be had to charge the cost of construction upon the lands especially benefited, as provided by section 75 of the charter, that determination precludes any proceedings to cast a debt upon the city at large under the provisions of section 65, and the debt not only is, but must be, an obligation solely of the special improvement district. (Abbott on Municipal Corporations, sec. 340.)

The city is merely an agent of the property owners for the collection of these taxes. No liability can be implied from the fact that it is given authority to bid at the tax sales. The county occupies the same position toward the state, and yet no primary liability is imposed upon the county. (*State v. Ada Co.,* 7 Idaho, 260, 62 Pac. 457; 25 Am. & Eng. Ency. of Law, 1233.)

The corporation has the corporate power to limit its liability by contract to pay only out of the fund which the statute au-

thorized it to raise for such payment. Such a power, whether expressly given or not, is necessary to other powers expressly granted and will be implied. (*United States v. Clark Co.*, 96 U. S. 211, 24 L. ed. 628; *Village of Park Ridge v. Robinson*, 198 Ill. 571, 92 Am. St. Rep. 276, 65 N. E. 104; *Second Nat. Bank v. City of Lansing*, 25 Mich. 207; *Atkinson v. City of Great Falls*, 16 Mont. 372, 40 Pac. 877; *Quill v. Indianapolis*, 124 Ind. 292, 23 N. E. 788, 7 L. R. A. 681; *Beard v. City of Brooklin*, 31 Barb. 142; *Connolly v. San Francisco* (Cal.), 33 Pac. 1109; *City of Cincinnati v. Crowley* (D. C.), 7 Ohio Dec. 596.)

The performance of the necessary preliminary work in making special improvements is one of the usual and necessary functions of the city; such preliminary expenses are ordinary and necessary expenses and are not ''debts'' within the constitutional limitation.

Even under appellant's theory that an election was necessary to authorize the improvement, the preliminary plans and specifications would necessarily be required before the election could be had. This clearly shows that this item is necessarily incurred in the performance of a function of the municipal government. (*Elkhart v. Wickwire*, 121 Ind. 331, 22 N. E. 342; *Gardner v. Street Commrs. etc.*, 188 Mass. 223, 74 N. E. 341.)

The following additional authorities are in point upon the question of the city's general obligation: *State v. Moss* (Wash.), 86 Pac. 1129; *City of Denver v. National Exchange Bank*, 34 Colo. 387, 82 Pac. 448; *Turner v. City of Guthrie*, 13 Okla. 26, 73 Pac. 283; *Northwestern Lumber Co. v. City of Aberdeen*, 20 Wash. 102, 54 Pac. 935; *Myer v. City of San Francisco*, 150 Cal. 131, 88 Pac. 722; *City of Greencastle v. Allen*, 43 Ind. 347; *State v. Common Council of Michigan City*, 138 Ind. 455, 37 N. E. 1041; *Stephens v. City of Spokane*, 14 Wash. 298, 44 Pac. 541, 45 Pac. 31; *City of Chicago v. People*, 48 Ill. 416; *Howell v. City of Philadelphia*, 38 Pa. St. 471; *Peake v. City of New Orleans*, 139 U. S. 342, 35 L. ed. 131, 11 Sup. Ct. Rep. 541, 38 Fed. 779.

Assessments for special improvements are not "taxes" within the provisions of the city charter limiting taxes for general municipal purposes to fifteen mills on the dollar for each year.

"All such assessments shall be known as special assessments for improvements and construction, and shall be levied and collected as a separate tax in addition to the taxation for general purposes." (Sess. Laws 1903, p. 137; 25 Am. & Eng. Ency. of Law, 2d ed., 1168.)

Local assessments may be made on a basis exclusive of improvements. The frontage rule, which has been long approved, of course, excludes improvements. (Cooley on Taxation, 3d ed., pp. 1217, 1226, 1227; 25 Am. & Eng. Ency. of Law, 2d ed., 1200.)

The law under which these proceedings are had differs from the general state law and other special charters in the state, and from most other special improvement laws, in that the special improvements rest upon the consent of the property owners who are to pay for them, and proceedings cannot be had if a majority of the owners object.

As in the case of general taxation the burden is distributed upon some general rule of equality, so a local assessment should, as nearly as practicable, be imposed upon all property standing in like relation. (25 Am. & Eng. Ency. of Law, 2d ed., p. 1198, sec. 5; *City of Denver v. Kennedy*, 33 Colo. 80, 80 Pac. 122; *Collins v. City of Holyoke*, 146 Mass. 298, 15 N. E. 909; Gray's Limitation of Taxing Power, p. 969, sec. 1894; *Bacon v. Mayor etc. of Savannah*, 86 Ga. 301, 12 S. E. 580; *Spencer v. Merchant*, 100 N. Y. 585, 3 N. E. 682, 125 U. S. 345, 31 L. ed. 763, 8 Sup. Ct. Rep. 921; *Lightner v. City of Peoria*, 150 Ill. 80, 37 N. E. 69; *Findlay v. Frey*, 51 Ohio St. 390, 38 N. E. 114.)

The charter leaves the council to ascertain the benefit by any method which may seem proper to them. It is certain that the findings could not be disturbed without an allegation that the apportionment was not as a fact in accordance with the benefits. (*Lent v. Tillson*, 72 Cal. 404, 14 Pac. 71; *Fagan v.*

*City of Chicago*, 84 Ill. 227; *Rogers v. City of St. Paul*, 22 Minn. 494; *Carpenter v. City of St. Paul*, 23 Minn. 232.)

The manner of apportionment is immaterial so long as it properly distributes the cost between the owners of the property benefited. (*City of St. Joseph v. Anthony*, 30 Mo. 537; *Jersey City v. Howeth*, 30 N. J. L. 521; *Pike v. Chicago*, 155 Ill. 656, 40 N. E. 567.)

Where a legislative body has fixed a standard for the levy of special assessments, the judiciary cannot substitute their own standard. (*Kelly v. Chadwick*, 104 La. 719, 29 South. 295.)

The decision of the corporate authority that a proposed improvement will be advantageous to a certain property will be conclusive, and an assessment for benefits is a judgment and cannot be attacked collaterally when made by a competent board. (Cooley on Taxation, 3d ed., 1211, 1256; *Cruger's Petition*, 84 N. Y. 619; *Davies v. Saginaw*, 87 Mich. 439, 49 N. W. 667.)

The time and manner of the payment of the assessments for the improvement of a street after they have been made in conformity to law is a matter in legislative discretion, and its action in that respect ought not to be disturbed by the courts unless it is manifestly unjust and oppressive. (*Ladd v. Gambell*, 35 Or. 393, 59 Pac. 113.)

It is not necessary that every improvement should actually extend to lands in order to add a benefit. (*Hart v. City of Omaha* (Neb.), 105 N. W. 546; *Sears v. Board*, 180 Mass. 274, 62 N. E. 398, 62 L. R. A. 144; Gray's Limitation of Taxing Power, sec. 1889; 25 Am. & Eng. Ency. of Law, 1189; *Roberts v. City of Evanston*, 218 Ill. 296, 75 N. E. 923 (citing other Illinois cases); *Goodrich v. Detroit*, 123 Mich. 559, 82 N. W. 255; *Collins v. City of Holyoke*, 146 Mass. 298, 15 N. E. 908; *L. & N. R. Co. v. City of St. Louis*, 134 Ill. 606, 25 N. E. 962; *Kelly v. City of Chicago*, 148 Ill. 90, 35 N. E. 752; *McCormick v. City of Omaha*, 37 Neb. 829, 56 N. W. 626; *Lansing v. City of Lincoln*, 32 Neb. 457, 49 N. W. 650; *Calumet Ry. Co. v. Moore*, 124 Ill. 329, 15 N. E. 764; *Walker v. City of Chicago*, 202 Ill. 531, 67 N. E. 369; *Culbertson v. Knight*, 152 Ind. 121, 52 N.

E. 700; *McKee Land & Imp. Co. v. Williams,* 63 App. Div. 553, 71 N. Y. Supp. 1141; *Ryder's Estate v. Alton,* 175 Ill. 94, 51 N. E. 821; *Allison Land Co. v. Burough of Tenafly,* 68 N. J. L. 205, 52 Atl. 231; *Shurtleff· v. City of Chicago,* 190 Ill. 473, 60 N. E. 870; *Dickson v. City of Racine,* 65 Wis. 306, 27 N. W. 58; *Mock v. City of Muncie* (Ind.), 32 N. E. 718; *Vreeland v. Mayor,* 60 N. J. L. 168, 37 Atl. 737; *In re City of Amsterdam,* 126 N. Y. 158, 27 N. E. 272; 37 Am. & Eng. Corp. Cas. 224; *Ray v. City of Jeffersonville,* 90 Ind. 567.) In the last case the charter provisions were in effect identical with those of the Lewiston charter.

. The holdings of the Pennsylvania court are not in line with the authorities of other states, but are based upon limitations peculiar to the constitution of that state.

It is immaterial whether the instrument be called an ordinance or resolution; if passed with the proper formalities, it is effective. (*Hellman v. Shoulters,* 114 Cal. 136, 44 Pac. 915, 45 Pac. 1057; *City of Los Angeles v. Waldron,* 65 Cal. 283, 3 Pac. 890.)

It is customary where the city engineer, instead of giving his time to the public service, gives some portion of it, at the direction of the council, to the superintendence of special improvements, to charge up the cost of such services to the improvement district and levy and collect the same with other expenses. (*Gibson v. Chicago,* 22 Ill. 566.)

AILSHIE, C. J.—The city of Lewiston has been acting under a special charter since 1863. The charter, however, involved in this action was granted by the legislative session of 1903 and is embodied in house bill No. 104 (Sess. Laws, 1903, p. 105 et seq.). Section 75 of that act (pp. 135-142) contains all of the provisions that require consideration or construction in this case. Acting under the authority conferred by the provisions of section 75 of the charter, the city council passed a resolution creating a sewer district and defining the boundaries thereof, which it designated the "Downtown Sewer District," and thereafter, in pursuance of the provisions of the charter, gave notice to the property owners, and made the

necessary estimates as to the cost of the contemplated improvement, and passed the necessary ordinances and resolutions looking to the construction of a sewer system within that district. The council divided the main sewer district into four subdivisions, and thereafter awarded contracts for the construction of the works in the several subdistricts. The appellant owns vacant and unimproved lots situated within subdistrict 4 of the main sewer district. His action was filed in the district court praying for an injunction restraining the city and the contractors from the prosecution of the work and from levying and collecting the special assessments provided for by the resolutions and ordinances. The defendants interposed a demurrer to the complaint on the ground that it does not state facts sufficient to constitute a cause of action, and this demurrer was sustained and a judgment of dismissal was thereupon entered. Plaintiff has appealed from the judgment.

The appellant has submitted nineteen questions for the consideration of the court in this case, some of which, it seems to us, deserve only a passing mention, and others, perhaps, more extended consideration. We will deal with them, however, in the order in which they are presented.

1. Appellant has argued in his brief that the city charter contains no express provision authorizing the construction of sewers otherwise than as a city obligation and that the expense of doing so must therefore become an obligation of the city, and must necessarily be submitted to a vote of the people as required by section 3 of article 8 of the constitution. Upon oral argument, however, he has abandoned this position and joined counsel for the city in submitting authorities to the effect that such an obligation as the city seeks to incur in this case is not an "indebtedness or liability" within contemplation of the inhibition of the constitution as provided in section 3 of article 8. From an examination and consideration of the cases cited, it would seem that the courts have quite generally held that such obligations required to be paid out of special assessments levied against the property particularly benefited are not an "indebtedness or liability" within the contempla-

tion of the constitutional provision, and that the same may be incurred without submission to a vote of the people. In other words, it is held that the legislature has plenary power in such matters, and that if the statutory provisions are followed and complied with, there can be no legal and valid cause of complaint upon the part of a property owner affected by the assessment. The following are some of the principal cases cited to this effect: *People v. Pacheco,* 27 Cal. 218; *Meyer v. City and County of San Francisco,* 150 Cal. 131, 88 Pac. 722; *Little v. City of Portland,* 26 Or. 235, 37 Pac. 911; *Atkinson v. City of Great Falls,* 16 Mont. 372, 40 Pac. 877; *City of Litchfield v. Ballou,* 114 U. S. 190, 29 L. ed. 132, 5 Sup. Ct. Rep. 820; Cooley's Constitutional Limitations, 7th ed., 92; *Davis v. City of Des Moines,* 71 Iowa, 500, 32 N. W. 470; *Corey v. City of Ft. Dodge* (Iowa), 111 N. W. 6; *Tuttle v. Polk,* 92 Iowa, 433, 60 N. W. 733; *City of Clinton v. Walliker,* 98 Iowa, 655, 68 N. W. 431; *Quill v. City of Indianapolis,* 124 Ind. 292, 23 N. E. 788, 7 L. R. A. 681; 1 Dillon on Municipal Corporations, 477; *Winston v. City of Spokane,* 12 Wash. 524, 41 Pac. 888; *Smith v. City of Seattle,* 25 Wash. 300, 65 Pac. 612; *Commissioners of Highways of Goshen v. Jackson,* 165 Ill. 17, 45 N. E. 1000; *Kansas City v. Ward,* 134 Mo. 172, 35 S. W. 600; 1 Abbott on Municipal Corporations, sec. 340; 25 Am. & Eng. Ency. of Law, 1233; *State v. Moss* (Wash.), 86 Pac. 1129; *German-American Savings Bank v. City of Spokane,* 17 Wash. 315, 38 L. R. A. 259, 47 Pac. 1103, 49 Pac. 542; *Rhode Island Mortgage & Trust Co. v. City of Spokane,* 19 Wash. 616, 53 Pac. 1104; Gray on Limitations of Taxing Power, sec. 2102; *City of Valparaiso v. Gardner,* 97 Ind. 1, 49 Am. Rep. 416; *Swanson v. City of Ottumwa,* 118 Iowa, 161, 91 N. W. 1049, 59 L. R. A. 620; *Gedge v. City of Covington,* 26 Ky. Law Rep. 273, 80 S. W. 1160; 2 Smith's Modern Law of Municipal Corporations, p. 879; 1 Abbott on Municipal Corporations, 336; *Borough of McKeesport v. Fidler,* 147 Pa. St. 532, 23 Atl. 799; Simonton on Municipal Bonds, sec. 135.

2. The next proposition urged is that "the tax which has been levied for the payment of this assessment amounts to more than fifteen mills annually upon the property assessed,"

and is therefore in excess of the debt limitation. This question is practically disposed of by appellant's admission on the first question. If the special assessment levied and the obligation thereby incurred were an "indebtedness or liability" within the meaning of the constitution, then and in that case the proposition would have to be submitted to a vote of the people—likewise if it were a city debt or liability. If it is not an obligation of the city, it is immaterial whether the annual assessments and installments to be paid amount to more than fifteen mills on the dollar of assessed valuation of the property. The statute authorizes the levy of a special assessment upon the property to be benefited, and the city council have pursued the methods pointed out and created a special fund to be raised annually for the purpose of meeting the installments as they fall due. This is in conformity with the provisions of the statute, and does not appear in any respect to be out of harmony with the constitution.

3. "Is it unlawful to make the assessments for sewer on the valuation of the ground exclusive of the valuation of the improvements thereon?" We answer this question in the negative. It was undoubtedly the intention of the legislature that the assessment should be made upon the lots and ground within the district rather than upon the improvements to be found thereon. This would appear both just and equitable, for the reason that the ground itself is permanent and is not capable of loss or destruction, while the improvements placed upon the ground may be of many thousands of dollars in value one day and be swept away by fire before another day comes. In other words, the improvements are capable and susceptible of sudden loss and destruction, and for that reason should not be taken into consideration in the apportionment of benefits to be received. The buildings or other improvements upon the land are increased but slightly, if any, in value by reason of the public improvement—they could be erected as cheaply after the construction of the sewer as they could have been before. The construction of the sewer will not increase the price of building material or of labor, but will increase the value of vacant lots abutting the sewer line or to be served

thereby. Assessments are often determined by the front foot or frontage upon the line of improvement. In those cases the improvement upon the property cannot be taken into consideration, and yet that is a very common method of determining the amount of assessment to be borne by each piece or parcel of land. (See 2 Cooley on Taxation, 3d ed., 1217, 1227; 25 Am. & Eng. Ency. of Law, 1200.)

4. It is next asserted that the council was without authority to divide the sewer district into subdistricts for the purpose of levying assessments. The charter (section 75) authorizes the council "to levy special assessments on the lots and parcels of land benefited by any such improvements in proportion to the benefits of said lots and parcels of land, respectively." It will appear from the reading of this statute that the legislature meant the basis of all such special levies and assessments to be the *benefits* received. Such a basis is undoubtedly just. The difficulty must necessarily arise in estimating and determining as between different lots and properties the respective benefits to be received. There can be no absolute standard of certainty in arriving at such a fact. It must, in the nature of things, be more or less uncertain, indefinite and speculative. The determination of the manner and method to be employed has been left to the city council. If in their judgment the topography of the district, the value and utility of lots in the different sections of that district, the facility with which they are to be served, the relative demand and urgency for the improvement, and their nearness to or remoteness from the business or residence portion of the district, require or demand the segregation of the entire district into separate and distinct classes or subdivisions for the purpose of reaching the nearest possible approach to a just and equitable assessment with reference to benefits to be received, then we can see no valid reason or objection to their doing so. (*City of Denver v. Kennedy*, 33 Colo. 80, 80 Pac. 122; *Collins v. City of Holyoke*, 146 Mass. 298, 15 N. E. 909; Gray on Limitation of Taxing Power, sec. 1894; *Bacon v. Mayor of Savannah*, 86 Ga. 301, 12 S. E. 580; 25 Am. & Eng. Ency. of Law, 1198.)

5. The appellant complains of the action of the council in its determination to make the interest on warrants issued payable annually. In this case it should be observed that the city council, instead of collecting the entire assessment at one time and in one installment, have divided it into five equal annual installments, and provided that each installment should bear interest at the rate of five per cent, payable annually. The statute provides (section 75) : "The council of said city shall in their discretion provide for the levy and collection of such assessments in installments instead of levying the entire assessment at one time, payable in installments of equal amount each year, none of which said installments shall run longer than ten years, or bear interest exceeding six per cent per annum." While the legislature have authorized the collection of interest at a rate not to exceed six per cent, they have entirely failed to specify the time for the payment of interest. The statute is silent as to whether it shall be paid annually, semi-annually or at the maturity of the installment. We think, however, that in view of the nature and purpose of the assessment and the manner of its collection, it would be reasonable to infer that they intended it should be paid annually. Indeed, that is the idea naturally conveyed to the mind where a statute provides that an obligation shall bear interest at a specified rate per annum. It was clearly within the power of the city council to provide that the interest on these installments should be paid annually.

6. Resolutions 1 and 2 provide for the maturity of the first installment of the assessment thirty days after the completion of the work, and resolution 3 provides for maturity of the first installment on May 2, 1907. Appellant takes exception to this on the ground that it will leave the matter of interest uncertain. In other words, he contends that it will be a matter of speculation as to when interest will begin to accrue. It seems to us that resolution No. 3, being the latest expression of the city authorities on the subject and their final determination as to the date of the maturity of the first installment, would be controlling, and that there should be no difficulty or uncertainty on that point.

7. Appellant claims that the lien of these assessments is uncertain and void, for the reason that the resolutions provide that interest shall begin to accrue from the maturity of the first installment. The charter (section 75) provides: "The owner of any piece of property liable to any such special assessment may redeem his property from such liability by paying the entire assessment chargeable against his property (upon the city clerk mailing him a printed notice) thirty days before the same is due and collectible, by paying all the installments of the assessments which have been levied, and also the amount of unlevied installments with interest on the latter at the rate of six per cent per annum, from the date of the maturity of the last installment."

It is difficult to tell just what the language employed here means. It is clear, however, that the justice of the matter would require that each installment bear interest from the date of the maturity of the first installment until payment. In view of the uncertainty of the language employed, we will infer that the legislature meant to authorize the payment of interest as we have above suggested, and we so hold.

8. It appears that appellant's property is some distance from the sewer line; neither does it abut on any of the laterals. He contends that since neither the main sewer line nor any lateral reaches his property, it is not, therefore, liable to assessment for the construction of such improvement. The charter provides that the cost of constructing such works shall be assessed "on lots and parcels of land benefited by any improvements in proportion to the benefits of said lots and parcels of land, respectively." Certainly, a lot two blocks away from sewer connections could not be benefited as much as would a lot adjoining and abutting on the sewer line, but it does not follow that such lot would receive no benefit whatever. Although a property is somewhat removed from the lines being constructed, still if it is capable of drainage by such sewer lines and of being connected therewith, it is certainly benefited to some extent, and to that extent should be assessed. The question as to the extent of the benefit to be received and the consequent amount of assessment to be im-

posed is left to the determination of the city council.  They
have made that determination and it does not appear that it
is either unjust or oppressive.  The assessment so made is
therefore a valid lien upon the property, and collectible in the
manner and by the method pointed out in the charter.  Coun-
sel for appellant have cited some New Jersey and Pennsyl-
vania cases (*Vreeland v. Mayor of Bayonne,* 58 N. J. L. 126,
32 Atl. 68; *In re Park Ave. Sewer,* 169 Pa. St. 375, 32 Atl.
574; *In re Sewer on Beechwood Ave.,* 179 Pa. St. 490, 36 Atl.
209; *Whitman v. City of Reading,* 169 Pa. St. 375, 32 Atl.
576) which apparently support his contention that outlying
lots not abutting on the improvements should not be assessed.
These decisions were rendered, however, under somewhat dif-
ferent statutes from ours and very different conditions.  The
great weight of authority and better reason are to the contrary
effect.   (*Hart v. City of Omaha* (Neb.), 105 N. W. 546; *Rich
v. City of Chicago,* 152 Ill. 18, 38 N. E. 255; *L. & N. Ry. Co.
v. City of St. Louis,* 134 Ill. 656, 25 N. E. 962; *McCormick v.
City of Omaha,* 37 Neb. 829, 56 N. W. 626; *Roberts v. City of
Evanston,* 218 Ill. 296, 75 N. E. 923; *Goodrich v. Detroit,* 123
Mich. 559, 82 N. W. 255; Gray on Limitation of Taxing
Power, secs. 1888, 1889; 25 Am. & Eng. Ency. 1189.)

9. A notice was sent out fixing January 5, 1907, as the
time for hearing objections to the sums and amounts assessed
against each particular piece of property within the sewer dis-
trict, but that notice was found to be defective, for the reason
that it referred simply to property within "Sewer District No.
1."   This error was discovered and subsequently a corrected
notice was sent out fixing January 25th as the time for holding
the meeting.  It appears that the council, in order to avoid
any difficulty or misunderstanding, and to give everyone an
opportunity for hearing, met both on January 5th, the time
designated for the first meeting, and January 25th.  It should
also be observed that the second notice that was sent out con-
tained a statement to the effect that it was given on account
of a typographical error in the first notice.  No one could
have been prejudiced by this action of the city council; every-
one was given an opportunity for a hearing, and that was the

only object and purpose of giving notice and holding the meeting. (*Gilmore v. Utica,* 131 N. Y. 26, 29 N. E. 841.)

10. This objection has been disposed of by our determination of point No. 5 heretofore considered.

11. The eleventh point urged is rather indefinite and uncertain. The most we can gather from it is that appellant complains of the apparent intention of the city council to issue warrants in favor of the defendants Miller and Enoch all to mature within one year, while the defendant Clark will receive his payments in five equal installments. However this may be, it is clear to us that under the provisions of subdivision 3 of section 75 of the charter, if the council determine to divide the assessment into installments running over a number of years, they must make those installments *equal.* If they do so, we do not see any cause of complaint on the part of the property owner, even though one contractor should get his pay before another.

12. Resolution No. 1 was passed March 23d and approved the 26th, but appears to have been delivered to the clerk March 24th, whereas the statute provides (section 75, subdivision 4) that it shall be delivered to the clerk "within two days after the passage and approval," etc. Appellant complains of this on the ground that the resolution appears to have been delivered to the clerk two days before its passage. There is nothing in this objection, for the reason that the clerk is an officer whose duty it is to attend all the meetings of the council and is the custodian of its records, papers and files. As a matter of fact, he is supposed to have had the resolution in his possession from the time of its first reading.

13. Resolution No. 1 was published by one insertion in the newspaper designated for that purpose. Subdivision 3 of section 75 of the charter requires the giving of "twenty days' notice of the passage and approval of said resolution by the council," etc. Subdivision 4 of the same section requires that such notice shall be published "in one of the newspapers published in said city." Appellant complains because this notice was not published in every issue of the paper for twenty days. There is no merit in this contention. The statute does

not undertake to specify the number of issues of the paper in which the notice shall appear. The requirements of this statute will be fully met if the notice is published once and the date of publication is at least twenty days prior to the date of the meeting or other action of which the publication purports to give notice. (*Royal Ins. Co. v. South Park Commrs.*, 175 Ill. 491, 51 N. E. 558; *Adlis v. South Park Commrs.*, 171 Ill. 424, 49 N. E. 565; *Philadelphia etc. R. Co. v. Shipley*, 72 Md. 88, 19 Atl. 1.)

14. It seems that one point is referred to in the boundary line of the district as lot 8 of the Miller tract, and that there is no recorded plat of that tract and therefore no record showing any such lot. It does appear, however, that the Miller tract has been platted, and that the map and plat is on file in the city engineer's office and has been issued and officially recognized by the city. This boundary line is, therefore, capable of definite and certain location and is sufficient.

15. The council met on January 25th for the purpose of equalizing assessments and hearing objections to previous assessments, and at that time the appellant's objections were filed. The assessment was not, therefore, finally confirmed at that meeting but was taken under consideration by the council, and they thereupon adjourned to a day certain. Appellant meanwhile commenced this action. He now complains because the council did not take definite action on January 25th. The statute did not require that they take definite and final action on the matter on January 25th or on any other particular date or at any other meeting. They might adjourn from time to time and take the matter under consideration until such time as they were prepared to act advisedly.

16. Appellant argues that no warrants can be drawn for this improvement until the city council first pass an ordinance making an appropriation for the payment thereof, as provided for by sections 42, 48 and 63 of the charter (Sess. Laws 1903, pp. 117, 119, 127). Those sections clearly apply to city indebtedness—to *debts and liabilities* for which the city becomes liable, and for which it must raise revenue by taxation to meet and liquidate. In the case at bar, the charter itself

makes the appropriation. It says: "The funds raised by such assessment shall be applied solely toward the payment of such improvements and construction and the redemption of the warrants and bonds issued therefor." The fund to be derived from the special assessment against the property benefited constitutes a separate, special and independent fund, available for the one purpose only, and cannot be used for any other purpose. When collected, it is held by the proper city official subject to the payment of the obligations outstanding against that fund. Upon refusal on the part of the officer intrusted with the fund to apply it toward the liquidation of the indebtedness as the same matures, he may be compelled to do so by proper application to the courts.

17. What we have said under subdivision 16 is applicable to the objection made under 17 and disposes of the same.

18. Appellant complains because the contract with defendant Miller was authorized by what is termed a "resolution" instead of an "ordinance." Section 75 of the charter seems to use the words "resolution" and "ordinance" interchangeably. Here, however, the resolution was passed in the same manner and under all the formalities required for the passage of an ordinance, and it does not make any difference what it is called so long as it accomplishes the purpose contemplated by the statute. (*Hellman v. Shoulters,* 114 Cal. 136, 44 Pac. 915, 45 Pac. 1057; *City of Los Angeles v. Waldron,* 65 Cal. 283, 3 Pac. 890.)

19. It appears that the defendant Miller is a civil engineer, and that he was employed in advance of the creation of the sewer district for the purpose of surveying the district and making estimates and maps and plats of the proposed district, and preparing plans and specifications for the proposed improvement. It is contended now that this is a duty imposed upon the city engineer, for which that official is paid an annual salary. Again it is contended that the payment for this service is not chargeable against property to be served by the sewer, but should be paid by the city at large, and that the contract for this service having been made in advance of the creation of the district cannot become a charge exclusively

against the property within the district.  These objections are not well taken.  In the first place, the survey of the district plans and specifications for the improvement and the like are as essential as the laying of the sewer line itself, and is as much a charge against the property as are the sewer pipes and the ditches and canals in which they are laid.  The fact that the contract for this service was made in advance of the creation of the district is not a valid objection to the charge. It was necessary to determine what lots and parcels of land should be properly included within the district and could be drained by a sewer system therein before the creation of the district.  As for this being a part of the duty of the city engineer, we are not advised.  If the city engineer had the time and was capable of discharging this duty, we suppose the city council would have caused him to discharge it.  If he had not the time for it, or for any other reason the council thought it best to employ an engineer for this special purpose, it was certainly within their power and authority to do so.

The judgment of the trial court should be affirmed, and it is so ordered.  Costs awarded in favor of respondent.

Sullivan, J., concurs.