(June 9, 1902.)

## COUNTY OF CANYON v. TOOLE.

[69 Pac. 320.]

PLEADING AND PRACTICE.—An allegation in a complaint that a petition which was presented to a board of county commissioners was "signed by a number of more than ten residents and taxpayers of said road district," is a sufficient averment to show that said petitioners were taxable for road purposes.

ROADS—PETITION FOR LAYING OUT—FILING AND APPROVING BOND.— A complaint which alleges that a petition for the establishment of a road was presented to the board of county commissioners, and that it was accompanied with a bond, and that said bond was filed, and avers that the commissioners appointed viewers to survey and view said road, and that said board received and accepted the report of said viewers, sufficiently shows that said bond was approved by the board.

BOARDS OF COUNTY COMMISSIONERS—COMPLIANCE WITH STATUTORY REQUIREMENTS.—It is true that boards of county commissioners are statutory, and derive all their powers from the statutes, yet it is sufficient if, in discharging a power vested in the board by statute it substantially complies with all the requirements of the statute, as a literal compliance is not required.

(Syllabus by Quarles, C. J.)

APPEAL from District Court, Canyon County.

Frank Martin, Attorney General, and H. A. Griffith, for Appellant.

The facts are fully stated in the opinion. The procedure by the board of county commissioners in opening a new road is in its nature partly legislative and partly judicial, and was adopted by the legislatures of this and sister states, not particularly as a safeguard for the protection of the rights of the individual, but to secure to the public a fair and intelligent use of the power delegated, having in mind the fact that county commissioners are generally men of practical minds and limited experience with legal rules and with parliamentary practice. The rights of the individual are adequately and abundantly protected by the law which gives to him the right to have each step of the board of commissioners reviewed and remedied in the proper proceeding by the higher courts. There is but one issue, but one fact to be established by this proceeding, and that is the question of the amount or extent of the damages and a reasonable compensation therefor. (*King County v. Neely,* 1 Wash. Ter. 241; *Humboldt County v. Dinsmore,* 75 Cal. 604, 17 Pac. 710.) Section 5216 of the Revised Statutes enumerates the things that shall be contained in the complaint in a proceeding of this nature. (*Siskiyou County v. Gamlich,* 110 Cal. 94, 42 Pac. 468.) The point first and most strongly urged was that no order was made for the filing of the bond and that the bond had not been approved. This objection, we think, was fully met and answered by the supreme court of California in the case of *Humboldt County v. Dinsmore, supra.* The order of the board of county commissioners approving the petition and appointing viewers, and their subsequent finding that the statutes had been compiled with and their order thereon to the county attorney to begin this proceeding have conclusively precluded these defendants from objecting here to the sufficiency of any of the prior acts of the board. An objection to such defects could be taken only in a direct proceeding for that purpose. (*Damrell v. San Joaquin Co.,* 40 Cal. 158; *In re Grove St.,* 61 Cal. 453; *Tehama Co. v. Bryan,* 68 Cal. 57, 8 Pac. 673; *Butte Co. v. Boydstum* (Cal.), 11 Pac. 781.)

Frank J. Smith, for Respondent.

The constitution of the state of Idaho provides that: "Private property may be taken for public use, but not until a just compensation, to be ascertained in a manner perscribed by law shall be paid therefor." (Iowa Const., sec. 14, art. 1.) "The authority granted to a board or tribunal to acquire private property for public purposes by special proceedings and not through the will or consent of the owner must be strictly pursued or the proceedings will be void." (*Sherman v. Buick,* 32 Cal. 242-256, 91 Am. Dec. 577 and note; *Damrell v. San Joaquin Co.,* 40 Cal. 154; *Brannan v. Mechlenberg,* 49 Cal. 672; *Smithers v. Fitch,* 82 Cal. 153, 22 Pac. 935; *Thatcher v. Crisman,* 6 Colo. App. 49, 39 Pac. 887; *Hentzler v. Bradbury,* 5 Kan. App. 1, 47 Pac. 330; *Sonoma Co. v. Crozier,* 118 Cal. 680, 50 Pac. 845.)   The board of commissioners in laying out a public road exercise judicial functions.   The necessary jurisdictional facts must appear. (*Kimball v. Alameda Co.,* 46 Cal. 19; *Siskiyou Co. v. Gamlich,* 110 Cal. 94, 42 Pac. 468; *Commissioners of Wabaunsee Co. v. Muhlenbacher,* 18 Kan. 129; *Gorman v. County Commrs.,* 1 Idaho, 553; *Conger v. Board of Commrs.,* 5 Idaho, 347, 48 Pac. 1064; *Rankin v. Jauman,* 4 Idaho, 394, 39 Pac. 1111; *Dunbar v. Canyon County,* 5 Idaho, 407, 49 Pac. 409; *Merriman v. Barnum,* 116 Cal. 619, 48 Pac. 727; *Tehama County v. Bryan,* 68 Cal. 57, 8 Pac. 673; *State v. Meyer,* 20 Or. 442, 26 Pac. 307, 308.)

QUARLES, C. J.—This action was commenced by the appellant, as plaintiff, to condemn a strip of land belonging to the respondent, J. J. Toole, twenty-five feet wide and one-half mile long, and another strip of land belonging to the respondent, J. L. Johnson, twenty-five feet wide and one-half mile long.   The complaint alleges the corporate existence of the appellant county, after which the allegations in said complaint are as follows:

"1. That the county of Canyon, plaintiff herein, is a municipal corporation, created and existing by virtue of the laws of Idaho.

"2. That on April 5, 1899, there was filed with the clerk of the board of county commissioners of said county a petition for the opening of a public road in road district No. 1 in the said county from a point on the center of the south line of section 14; and from thence running in a northerly direction one and one-half miles to the center of section 11; thence in an easterly direction one-half mile to the center of the east line of said section; thence in a northerly direction one-half mile to the northeast corner of the said section; and thence in an easterly direction one and one-eighth miles to the intersection of the present county road, as shown on the plat attached hereto, and marked Exhibit 'A,' and signed by a number of more than ten residents and taxpayers of the said road district. That the said petition set forth and particularly described the said proposed road, and the owners of the land through which the said proposed road would run, and the probable cost, necessity, and advantages of the same, and that the said petition was accompanied with a good and sufficient bond.

"3. That thereafter, and on April 10, 1899, at the regular meeting of the said board, the said petition was regularly considered, and found to be proper in form and in substance, and on motion an order appointing three proper persons to view and survey the said proposed route, and submit their report to the said board, was duly made.

"4. That thereafter, and on April 7, 1900, the said viewers filed with the clerk of the said board their report, showing that, after first having been duly sworn to discharge their duties faithfully, they had viewed and surveyed the proposed road over the most practicable route, and had notified all the owners of the land over which it passed of the fact, and obtained the written consent to give the right of way from all of the said land owners, except G. W. Shurtliff, W. W. Stone, H. H. Kelly, E. Stuart, and J. J. Toole, and had estimated the damage to the nonconsenting land owners at thirty-five dollars, twenty-five dollars, twenty-five dollars, seventy-five dollars, and seventy-five dollars, respectively, and had estimated the total cost of

constructing the said road at $485, and had recommended the said road over the said route, as appears by the said plat.

"5. That thereafter, and on July 19, 1900, at the regular meeting of the said board the said petition and said report came on regularly for hearing, and on motion it was duly ordered that the eleventh day of September, 1900, be set for the time for hearing the said petition and considering the said report, and that the clerk give legal notice to all nonconsenting land owners, and to all persons interested in same, of the said facts.

"6. That thereafter, and on September 11, 1900, the said matter came on regularly for hearing as ordered, at the appointed time, and the said board found from the evidence that written notice had been duly served upon all of the nonconsenting land owners ten days prior to the said day fixed for the hearing of the said report, and that it was necessary for the said board of commissioners to make a personal examination and observation of the said proposed road; and upon motion it was duly ordered that the further hearing of the said matter be continued to the regular meeting of the said board on October 9, 1900.

"7. That thereafter, and on October 9, 1900, the further hearing of the said matter came on regularly as appointed before the board, and the evidence of all parties, and of all nonconsenting land owners personally, was heard and considered, and, after due deliberation and consideration of all the evidence and facts, it was found that the said road was a necessity and great public benefit; and on motion it was duly ordered by the said board that the said report be approved, and the said petition be granted.

"8. That thereafter, and on January ——, 1901, at the regular meeting of the said board, upon suggestion, it was ordered that February 25, 1901, be fixed as the time for further considering the said petition and report; and the clerk of the said board was ordered to give legal notice to all nonconsenting land owners and all persons interested in the said proposed road of the said meeting, and the purposes thereof.

"9. That thereafter, and on February 25, 1901, the said matter came on regularly for hearing as ordered, at the appointed time, and all of the nonconsenting land owners appeared, and it appeared to the said board that all persons interested had been duly notified, and further evidence was heard and considered; and after due deliberation, and consideration of all the evidence and the facts, it was found that the said road was a necessity and great public benefit, and on motion it was duly ordered by the said board that the former action on October 9, 1900, approving the said report and granting the said petition, be reaffirmed, and the said report be reapproved, and the amount of damages estimated by the said . viewers be retendered to the nonconsenting land owners, and the said tender be kept good, and that in case the said sums, or either of them, be refused, the attorney for the county should institute proceedings by law to procure the said road.

"10. That all of the nonconsenting land owners have accepted and have been paid the said sums so estimated by the said viewers, excepting the said J. J. Toole and E. Stuart, and that the said E. Stuart had transferred all of her right and title in and to the said southwest one-quarter of section 14, township 9 north, range 5 west of Boise meridian, as shown on the said plat, to one J. L. Johnson, one of the above-named defendants herein, after the said report of the said viewers was made.

"11. That the road supervisor of the said road district tendered the said sum of seventy-five dollars to each of the said defendants on the second day of March, 1901, and has at all times been and now is, ready to pay the same, but that the said defendants each refused, and now refuses, to accept the said offer.

"12. That all of the persons owning land over which the said proposed road passes who now still refuse to give the said right of way are the said J. J. Toole and the said J. L. Johnson, defendants herein, and that the land owned by the said J. J. Toole, over which the said proposed road passes, is

the southeast one-quarter of section 14 in the said township and range, and the portion of the said land necessary for the said proposed road is a strip of land twenty-five feet wide and one-half mile long on the west side of the said quarter section, and that the land owned by the said J. L. Johnson, over which the said proposed road passes, is the southwest one-quarter of the same section, and the portion of the said land necessary for the said proposed road is a strip of land twenty-five feet wide and one-half mile long on the east side of the said quarter section, and that the said proposed road is an absolute necessity and a great public benefit, and that the said strips of land so sought to be used for the said proposed road purposes are absolutely necessary and indispensable to the opening and use of the said road, and that each of the said sums so offered to each of the said defendants are reasonable and just compensations for each of the said parcels of land, and for all, each, and every particular damage or inconvenience to each of the said parcels of land or farms and to each of said defendants, and that all of the said proposed road is now practically opened and ready for use, excepting the said one-half mile over the said defendants' lands, and that all of the said portion of the said road now opened is entirely useless as a road, and of no value to the public whatever, without the opening of the said remaining one-half mile.

"Wherefore plaintiff prays judgment:

"1. That a right of way for the purposes of a public highway fifty feet wide, and extending from the center of the south line of section 14, in township 9 north, range 5 west of Boise meridian, in a northerly direction, one-half mile along the said half section line, and twenty-five feet on either side of the said line, be condemned and purchased and opened and used for the said purposes, as set forth in this complaint.

"2. That the road supervisor of the said road district No. 1 be directed to pay the said sums of money into court for the uses of the said defendants, viz., seventy-five dollars for

defendant J. J. Toole, and seventy-five dollars for defendant J. L. Johnson.

"3. That the said road be ordered opened according to law.

"4. And that defendants be ordered to pay the costs and necessary expenditures of this proceeding; and for such other and further relief and orders as to the court may seem necessary, just and equitable."

To the said complaint the respondents demurred upon the ground that the said complaint does not state facts sufficient to constitute a cause of action against said defendants, or either of them. Said demurrer was sustained by the court, and, appellants having elected to stand upon said complaint, a judgment dismissing the action was regularly entered in favor of the respondents, and from which the appellants appeal.

It is argued by the respondents that the allegation in said complaint that the petition presented to the board of commissioners was "signed by a number of more than ten residents and taxpayers of the said road district is not sufficient, and that it should have been alleged that they were residents of said road district, and taxable for road purposes." We think the allegation sufficient. Under the provisions of section 4 of the act of February 7, 1899 (see Sess. Laws 1899, p. 129), an annual property tax for road purposes must be levied upon all property. Persons subject to pay poll taxes are required to pay a special road tax; hence all taxpayers are taxable for road purposes.

It is also urged against the sufficiency of said complaint that there was no allegation to the effect that the bond presented with the petition to the board of commissioners was approved by the board. The complaint does allege that the petitioners presented the required bond, and that the same was duly filed. The board recognized the sufficiency of the petition and of the application, and also the sufficiency of the bond, by appointing viewers to view and survey the proposed road, which has been held to be sufficient evidence of the approval of the bond by the supreme court of California under a statute identical with

ours.    (See *Humboldt Co. v. Dinsmore,* 75 Cal. 604, 17 Pac. 710.)

We think said complaint sufficiently alleges the consent of the owners of the land over which the road ran, with exception of the respondents and others, and that all of said owners, after the survey and viewing of said proposed road, accepted the price fixed by the viewers, with the exception of the respondents. The allegations in said complaint sufficiently show that the board fulfilled the requirements of the statute as to the meetings of the board, etc.

The objection that the complaint failed to show that the respondent J. L. Johnson had no notice is not well taken. The complaint avers that the predecessor in interest of the respondent Johnson, namely, E. Stuart, sold and transferred the land in question, owned by respondent Johnson, after she had received notice, and after the said viewers had made their survey and report, and that he had actual notice and attended the meetings of the board of commissioners; and he cannot now be heard to say that he had no notice, if the allegations in said complaint in this regard are true.

The objection that the complaint does not allege a tender cannot be sustained. The complaint alleges that the damages to each of the respondents growing out of the appropriation for a public road of the strip of land in question amounted to the sum of seventy-five dollars to each of the respondents, and that said sums were tendered by the road overseer before the commencement of this action, and that said overseer had at all times been ready and willing to pay each of respondents said sum. The complaint sufficiently avers that the board had ordered and directed the county attorney to commence this action.

A careful examination of the complaint convinces us that it alleges facts showing a substantial compliance on the part of the county commissioners with all the requirements of the statutes relating to the condemnation of the necessary land for the road mentioned in the complaint. It is argued, however,

on behalf of respondents, that the board of county commissioners, being a statutory board, must strictly comply with every requirement of this statute. The law does require the board to do all the things required by the statute, but in the doing of those things it is only necessary that they substantially comply with the statute. The argument contained in the brief of counsel for the respondents in support of the said demurrer is technical, and the objections are technical, and the lower court should have overruled the demurrer.

The judgment is reversed, and the cause remanded, with instructions to the lower court to set aside the order sustaining the demurrer and to overrule the same, and for further proceedings consistent with this opinion. Costs awarded to appellant.

Sullivan and Stockslager, JJ., concur.