(March 27, 1908.)

ON REHEARING.

[94 Pac. 1029.]

BOARD OF COUNTY COMMISSIONERS—REGULAR AND ADJOURNED SESSIONS—WHAT ARE—REPEALING STATUTE—FINDINGS OF THE BOARD OF COUNTY COMMISSIONERS—CONTRACT FOR BRIDGE—VOTING BONDS.

1. Rev. Stat., secs. 1755, 1756 and 1758, provide for regular and adjourned meetings of the board of county commissioners.

2. The time for holding regular meetings of the board is fixed by law. (Rev. Stat., sec. 1755.)

3. When the board meets in regular session, the law contemplates that it will proceed to transact the public business with reasonable dispatch, but the law does not fix or limit the time during which or over which it may adjourn or take a recess.

4. The duration or time of a recess or adjournment should be governed wholly by the exigencies of the case and the public welfare.

5. An adjourned meeting of the board is a meeting to be provided for while the board is in session, by a proper order, said meeting to be held after the close of the regular session.

6. In the absence of the board closing the regular session by an adjournment *sine die,* the law does not close such session; the law fixes no particular time when the board shall adjourn when in regular session, but its session will close by an adjournment *sine die,* by the opening of another session under the law, or by failure to meet under a recess adjournment.

7. The fact that the regular session of the board is adjourned from day to day, or to a future date fixed in the order of adjournment, at which a particular business is specified to be transacted in connection with or as general business, does not terminate the regular session or constitute the meeting thus to be held an adjourned meeting within the meaning of sec. 1756, Rev. Stat., or terminate the jurisdiction of the board as of the regular session.

8. Where it clearly appears by an order of adjournment that the regular business of the board has not been completed, and that the same will be considered at a future date, fixed by an order of adjournment, and there is no adjournment *sine die,* and the

session has not terminated by the opening of another session, such adjournment will be construed as a recess adjournment and a continuation of the regular session.

9. Sec. 1762, Rev. Stat., was specifically repealed by an act approved February 21, 1905 (Laws of 1905, p. 75).

10. Since the repeal of sec. 1762, Rev. Stat., no petition is necessary in order to confer jurisdiction upon the board of county commissioners to construct a bridge, as sec. 3604, Rev. Stat., amended by acts approved February 7, 1899, and March 14, 1899 (Laws of 1899, pp. 136, 443), authorize the board of county commissioners, whenever the interests of the county require it and the board deems it for the public good, to bond the county for the construction or repair of a bridge, when the indebtedness to be thereby created exceeds the income or revenue of the county for that year, provided that such bonds be first authorized by a vote of two-thirds of the qualified electors of the county voting at such election.

11. To authorize the issuance of municipal coupon bonds for the construction of a bridge, the board of county commissioners should find, and the record should show, a substantial compliance with each step required by the statute, to be taken before said bonds are issued.

12. The fact that the board of commissioners submitted to the qualified electors of the county the question of issuing bonds to cover the costs of superintending the construction of a bridge, as well as the contract price for the bridge, does not render such bonds void.

13. The board of commissioners are authorized to issue bonds when voted by the electors qualified to vote at such election, to cover the costs and expense of superintending the construction of a bridge, as the work of superintending is as much a part of the construction as furnishing material, or the performance of labor in connection therewith.

(Syllabus by the court.)

APPEAL from the District Court of Seventh Judicial District for Canyon County. Hon. Ed. L. Bryan, Judge.

An action to restrain the board of county commissioners from issuing and selling negotiable bonds for the construction of a bridge. Judgment for respondent. *Affirmed.*

J. J. Guheen, Attorney General, Owen M. Van Duyn, Prosecuting Attorney of Canyon County, and Smith & Scatterday, for Respondents.

John F. McLane, and W. A. Stone, for Appellants.

STEWART, J.—A rehearing was granted in this case and the cause reargued. From a further consideration of the questions involved, we are now satisfied that the court was in error in its original opinion in holding that the order made by the board of county commissioners on October 17, 1906, as follows: "On motion the board adjourned until November 1, 1906, for the purpose of allowing claims for courthouse construction and any other regular business which the board may choose to take up," constituted said meeting of November 1, 1906, an adjourned meeting, under sec. 1756, Rev. Stat.

It is first contended by appellant that the board of commissioners of Canyon county was without jurisdiction to issue and sell the bonds here in question, and that an injunction should have been granted. The facts shown in this connection are these: The first day of October (1906) term of the commissioners was the 8th day of October. On that day the board convened and took certain proceedings not here material and adjourned to the 9th; then to the 10th; then to the 11th. On the 11th the petition for the bridge was acted upon and the board approved the same, ordered notices for bids to be published, returnable on November 21st, and approved the plans submitted by the surveyor. Then an adjournment was taken to the 12th; then to the 13th; then to the 15th; then to the 16th, and then to the 17th. On the 17th, the following order was entered of record: "On motion the board adjourned until November 1, 1906, for the purpose of allowing claims for courthouse construction and any other regular business which the board may choose to take up." On November 1st an adjournment was taken to the 21st without any purpose for the adjournment being stated, and on the 21st the bridge contract was let and the bond election was ordered. Thereupon the board adjourned to the 22d; then to December 3d; then to December 13, "for the purpose of transacting any business that may properly come before them at that time," and on the 13th they adjourned until January 3, 1907. On the last-named date, the election was canvassed, and the board adjourned *sine die.*

Summarizing these facts it appears that the board remained in session from day to day, evidently transacting ordinary business, until October 17th. On that day they adjourned for two weeks (until November 1st). All the vital bond proceedings were taken after this adjournment.

On the foregoing facts, the question presented is: Did the adjournment of October 17th terminate the regular session of the board and constitute the subsequent sessions "adjourned meetings," as provided for in sec. 1756, Rev. Stat., and if so, were the subsequent proceedings of the board *coram non judice?* The complaint alleges and the answer admits, that no order stating the purposes of adjournment, other than those hereinbefore set forth, was made or entered of record, and that no notice of the meeting of November 1, 1906, was posted. The answer to this question is to be found in the statutes and the construction to be given to them. The statutes are as follows:

"The regular meetings of the board of commissioners must be held at their respective county seats on the second Mondays in January, April, July and October of each year, and must continue from time to time until all business before them is disposed of. Such other meetings must be held to canvass election returns, equalize taxation and other purposes as are prescribed by law or provided for by the board." (Sec. 1755, Rev. Stat.)

"Adjourned meetings may be provided for, fixed and held for the transaction of business by an order, duly entered of record, in which must be specified the character of business to be transacted at such meetings, and none other than that specified must be transacted." (Sec. 1756, Rev. Stat.)

"If at any time after the adjournment of the regular meeting, the business of the county requires a meeting of the board a special meeting may be ordered by a majority of the board.

"The order must be entered of record, and a five days' notice thereof must, by the clerk, be given to each member not joining in the order. The order must specify the business to be transacted, and none other than that specified must be transacted at such special meeting." (Sec. 1757, Rev. Stat.)

"All meetings of the board must be public. . . . . The clerk of the board must give five days' public notice of all special or adjourned meetings, stating the business to be transacted, by posting three notices in conspicuous places, one of which shall be at the courthouse door." (Sec. 1758, Rev. Stat.)

The statute thus provides for three different kinds of meetings of the board of county commissioners, to wit, regular, adjourned and special.

The statute does not limit the duration of the regular sessions of the board; the law does, however, contemplate that when the board meets in regular session, it will proceed to transact the public business with such reasonable dispatch as the welfare of the public may demand. The statute does not fix or limit the time during which the board may adjourn or take a recess during the regular session. The statute does not prohibit the board from adjourning to a future date as a continuation of the regular session. The law, however, contemplates that the duration of such adjournments will be governed wholly by the exigencies of the case and the public welfare or the county's business.

The purpose of sec. 1756 evidently was to empower the board, when about completing its regular business, to at such time, by an order then made, provide for an adjourned meeting of the board to a date in the future, for the transaction of such special business as may be fixed by the board in an order duly entered of record during the regular session.

The law provides for special meetings to be called after the adjournment of a regular session, by an order of the majority of the board to be entered of record, and five days' notice is required to be given by the clerk to each member not joining in the order. The clerk is required to give five days' notice of both adjourned and special meetings by posting three notices in conspicuous places, one of which shall be at the courthouse door. The only difference between adjourned and special meetings is, an adjourned meeting is a meeting to be provided for while the board is in session, by a proper order, said meeting to be held after the close of the regular session; a special meeting is a meeting called upon order of a majority

of the board after the close of a regular session, to be held at such time as the order may fix. For either of said meetings the clerk must give five days' public notice by posting three notices stating the business to be transacted, one of which notices shall be at the courthouse door.

The order made by the board in this case on October 17, 1906, evidently was intended, and in fact does, adjourn the regular session of the board from that date to November 1, 1907. The fact that the order specifies that upon that day the board will take up the "allowance of claims for courthouse construction, and any other regular business" does not make said session an adjourned meeting. It is clear from said order that it was the intention of the board to make said session a continuation of the regular session for the transaction of regular business. The order provides for taking up such regular business as the board may choose. The fact that the board used in this order the word "adjourned" instead of the word "recess" does not change the character of the session to be held. I apprehend, had the board used in the order the word "recess" instead of the word "adjourned," there would be no contention in this case but what the meeting would have been a continuation of the regular session; in other words, had the board said, "on motion the board takes a recess until November 1, 1906, for the purpose of allowing claims for courthouse construction, and any other regular business which the board may choose to take up," that such order would have been clear and the intention of the board apparent that such meeting was a continuation of the regular session. After making the order in question, the regular session was not closed by an adjournment *sine die.* In the absence of the board closing the regular session by an adjournment *sine die,* the law does not close such session, as the law fixes no particular time when the same shall adjourn when in regular session. The board may continue in session as long as it has public business to attend to. Its session may close by an adjournment *sine die,* by the opening of another session under the law, or by a failure to meet under its recess adjournment.

The law thus gives notice of the regular sessions of the board, and the public is required to take notice of all the business coming before the board at its regular session and while in regular session, and so long as the board continues in regular session, the public is presumed to have notice of the business to be transacted at such session.    If the board sees fit at any meeting during the regular session to give special notice of any business to be transacted at such session by adjourning from day to day, or to a time certain, and fixing in such order of adjournment the business which will be transacted by the board at such time as regular business, such facts do not terminate the regular session or constitute the meeting thus to be held an adjourned meeting as provided for in sec. 1756, Rev. Stat., or terminate the jurisdiction of the board as of the regular session, and if in this case the meeting on November 1st was a continuation of the regular session, the public is presumed to have notice of the business to be transacted, just as it is presumed to have notice of the business to be transacted should the adjournment be from day to day. The order in this case clearly indicates that the board had not completed all of the business coming before it at the regular session, at the date of adjournment on October 17th, neither is there any complaint in this case that the board was not acting in the best interests of the public or disposing of the public business with reasonable dispatch, and by the adjournment it thus notified the public that there was more regular business to be transacted by the board and that the same would be continued on November 1st as regular business.    As long as the board had not terminated its session by an adjournment *sine die,* or the session had not terminated by operation of law, the mere fact that an adjournment was taken to a future date would not operate as a termination of the regular session.    No injury can be done to the public by such adjournment as that specified in the order of October 17th, for if, as we now hold, it is a continuation of the regular session, the public are fully advised by the publication required by subdivision 19 of sec. 1759, Rev. Stat., as amended by an act approved February 14, 1899.    This section requires that at

the adjournment of each session of the board, they shall cause to be published such brief statement as will clearly give notice to the public of all acts and proceedings, and sec. 1776, as amended by the act of February 14, 1899, provides for an appeal at any time within twenty days after the first publication or posting of such statement. The publication required by sec. 1759, as amended, is after the close of each session, that is, after the final adjournment or termination of the session, whether it be regular, adjourned, or special, and the public are amply protected by being fully advised of all business transacted at such session. We are, therefore, convinced that the meeting held on November 1st was a legal meeting, a continuation of the regular session of the board, and that the board had full power and authority to transact any business regularly coming before it as of the regular session.

The next question argued by appellant relates to sec. 1762, Rev. Stat., and that is whether or not this section is still in force in this state. This question is answered by an act of the legislature approved February 21, 1905 (Laws of 1905, p. 75); sec. 5 of this act reads: "That section 1762 of the Revised Statutes of the State of Idaho be and the same is hereby repealed." This is a specific repeal of sec. 1762, and leaves said section no longer in force in this state.

Sec. 1762, *supra*, having been repealed before the initiation of the proceedings to issue and sell the bonds in controversy in this case, the letting of the contract for the construction of the bridge proposed to be constructed from the bond issue was governed by sec. 3 of art. 8 of the constitution and sec. 947, Rev. Stat. This section provides that the contract shall be let by the board of county commissioners and just what steps are necessary in order to award such contract.

Sec. 1762 having been repealed, it was not necessary to present a petition to the board praying that the bridge be constructed.

Sec. 3604 of the Rev. Stat, as amended by an act of the legislature approved February 7, 1899, and an amendatory act thereto approved March 14, 1899 (Laws 1899, pp. 136, 443), provides: "When the interests of the county require it and

the board of commissioners of the county deem it for the public good to bond the county . . . . for the construction or repair of roads or bridges, . . . . and the indebtedness or liability of the county that may be created by the bonding, . . . . exceeds the income or revenue of the county for that year, the board of commissioners may issue bonds of the county as provided by sec. 3602 of this act; provided, that the issuance of such bonds be first authorized by a vote of two-thirds of the qualified electors of the county voting at an election held for the purpose, as hereinafter provided.''

This statute does not require a petition or a hearing thereon, but leaves the matter to the judgment of the board of county commissioners as to whether or not the proposed issue of bonds be submitted to the electors of the county.

The record in this case shows that on November 21, 1906, the commissioners, when in regular session, opened bids and awarded the contract for said bridge to Chas. G. Sheeley, and ordered that an election be called and held for the purpose of submitting to the qualified electors of said county the question of issuing bonds of said county for the construction of said bridge. This was a sufficient finding of the board as to the necessity and advisability of constructing said bridge.

As to the finding of the board with reference to the notice of election, sec. 3610, Rev. Stat., as amended (Laws 1899, p. 139) provides: ''If the question of bonding the county as herein provided is to be submitted to the voters of the county at a special election held for that purpose, the board shall cause printed or written notices of the intention to hold such election to be posted in two or more conspicuous places in each precinct of the county, and shall also cause a printed notice of the intention to hold such an election to be published in one or more newspapers of the county,'' etc.

The record in this case shows that a notice of the bond election was given and published for four weeks beginning with the issue of December 8th and ending with the issue of December 29, 1906.

The affidavit of the clerk shows that the notice was posted in two conspicuous places in said county for more than twenty

days prior to December 29, 1906. This publication and posting was in full compliance with sec. 3610, *supra*. The record shows that on January 3, 1903, the board met and that the returns of said election had been received from all the precincts, and the board, proceeding with the canvass of the votes at such election, found that there were 1495 votes in favor of issuing said bonds and 178 against; and then the record recites that "It appearing from the above returns that more than two-thirds of the total number of votes cast at such election were for the issue of bonds in the sum of $18,000 for the building of a bridge over the Boise river at Notus, Idaho, . . . . it is hereby decreed that such question carried and the board of county commissioners of Canyon county, Idaho, are hereby authorized by such vote to issue negotiable interest bearing Canyon county bonds in the sum of $18,000 for the erection and construction of a bridge over the Boise river at Notus." This is a sufficient finding, under the statute, that the board was authorized, and so found, to issue said bonds, and that the law had in all things been complied with. The record is sufficient as to findings on the jurisdictional facts; to wit, first, that the board deemed it for the public good to bond the county for the construction of a bridge in the sum of $18,000. Second, that notice of the election was given as required by the law. Third, that said election was held, at which more than two-thirds of the qualified electors voting at such election voted in favor of issuing said bonds. These are all the jurisdictional facts which the board is required to find, and the record of the board shows that a sufficient finding was made. To authorize the issue of municipal bonds the records of the board should show a substantial compliance with each step required by the statute. This appears to have been done in this case.

In the case of *Canyon County v. Toole*, 8 Ida. 501, 69 Pac. 320, this court had occasion to pass upon the sufficiency of the records of the board of county commissioners, in matters coming before it under the statute, and in that case the court said: "It is argued, however, on behalf of respondents, that the board of county commissioners, being a statutory board, must

strictly comply with every requirement of this statute.   The
law does require the board to do all the things required by the
statute, but in the doing of those things it is only necessary
that they substantially comply with the statute.''

Secs. 1753 and 1764, Rev. Stat., specify the record to be
kept of the proceedings of the board of county commissioners,
and in subdivision 1 of sec. 1754 it is provided that they
must keep ''A 'minute-book' in which must be recorded all
orders and decisions made by them, and the daily proceed-
ings had at all regular and special meetings.''   This statute
does not require that the board of county commissioners shall
recite in their proceedings their decisions and judgments with
the same precision and exactness required by courts of rec-
ord.   A substantial compliance with the statutes is sufficient.
It was not necessary in this case for the board of commission-
ers to find as a fact that notice of election had been given for
the statutory period, or to find that it was to the best interest
of the county that a bridge be constructed.   If, in fact, a no-
tice was given, and the board proceeds with the steps required
after notice, and records such steps, it is a substantial finding
of the board that the bridge was necessary and that notice
was given.

While the statute requires that the board shall record its
minutes and decisions, yet if the record shows by the minutes
so recorded that the board have substantially complied with
the law,   in its proceedings with reference to the issuing of
municipal coupon bonds, the records and findings of the board
will be sufficient in the absence of some showing that the
board did not have jurisdiction and did not proceed as pro-
vided by law.

It is next contended that the bonds to be issued are void
for the reason that they were voted in excess of the contract
price for said bridge.   It appears that a petition was filed
with the board asking that they construct the bridge in ques-
tion.   The petition was allowed and notice given that bids
would be received on November 21, 1906.   On this day the
commissioners met and opened said bids and awarded said
contract to one Chas. G. Sheeley for $17,832; that afterward

the question of authorizing bonds to be issued in the sum of
$18,000 was submitted to the voters and carried by more than
two-thirds of those voting at such election. The proposed
bonds being $168 in excess of the contract price for the bridge,
is the ground upon which appellants contend that the pro-
posed issue of bonds is void. As heretofore stated, sec. 1762,
Rev. Stat., under which the petition for the bridge and the
advertisement inviting bids was made, was repealed. But
that makes no difference in this case, as the question of in-
curring the indebtedness for $168 in excess of the bid for the
construction of said bridge was submitted to the voters of
said county and by them approved; in other words, in sub-
mitting the question as to the issuing of bonds, the proposi-
tion submitted the question of issuing bonds for the sum of
$17,832, contract price for the bridge, and $168 for superin-
tending the same, making in all a total of $18,000; this the
commissioners had authority to do. They had authority to let
the contract for the construction of the bridge and employ a
superintendent to superintend such construction. The work
of superintending is just as much a part of the construction
of a bridge as the furnishing of material therefor, or other
labor in connection therewith. (*McGilvery v. City of Lewis-
ton,* 13 Ida. 338, 90 Pac. 348.)

This disposes of all the questions raised in this case. The
county commissioners substantially complied with the law in
all matters in relation to the issuing of said bonds, and the
proposed issue of bonds is valid. The former decision of this
court is overruled and the judgment of the trial court is
affirmed. Costs awarded to respondents.

Sullivan, J., concurs.

Ailshie, C. J., concurs in part.

AILSHIE, C. J.—I concur in the conclusions reached, ex-
cept as to the adjourned meeting of the board of commissioners
held on November 1, 1907. I cannot agree with the majority
in holding that meeting a "regular" meeting so as to do

away with the necessity of giving notice thereof, as provided by sec. 1758, Rev. Stat. I think such a holding is dangerous, and I am unable to understand or construe secs. 1755 to 1758, Rev. Stat., inclusive, so as to justify it under the law.