(December 21, 1908.)

JAMES C. BROAD, Appellant, v. CITY OF MOSCOW, a Municipal Corporation, Respondent.

[99 Pac. 101.]

CONTRACTS—SEWERAGE CONSTRUCTION—SPECIAL ASSESSMENTS—BONDS ISSUED FOR SEWERAGE WORK—LIABILITY OF CITY—DUTY OF OFFICERS—REMEDY.

1. A contract for the construction of sewerage works, under the provisions of an act approved February 20, 1903 (Laws 1903, p. 26), should be made with the chairman of the sewerage committee, where the expense of such improvement is to be raised by special assessments against the property benefited.

2. Where a sewerage district is created, under the provisions of the act approved February 20, 1903, and the works to be constructed therein are to be paid for out of special assessments made against the property of said district, the indebtedness thereby created becomes and is an indebtedness against the property of said district, and is not an obligation or indebtedness of the city or village in which, or out of a portion of which, such district is created.

3. Where a contract is entered into for the construction of sewerage works, under the provisions of the act of February 20, 1903, to be paid for by special assessments, the contractor must look to the property of said district for the payment of the contract price, and if the city or village authorities fail to deliver the bonds agreed to be delivered in payment of the contract price, the remedy of the contractor is against such officers to compel them to perform their duty, and no right of action lies against the city for damages for failure to deliver such bonds.

4. Where a contract is entered into for the construction of sewerage works to be paid for out of a fund arising from special assessments levied against the property within the district, the liability becomes a liability *in rem* against the property, and is not a liability of the person or municipality.

5. Where public works are to be paid for from special assessments, and the city or village does not agree or obligate itself to pay any part of such assessment, but the entire expense is to be paid from special asesssments, then and in such case the city is not liable in an action for damages because its officers have failed to do their duty, either in collecting such special assessments or paying them over to the contractor.

6. Where a sewerage district is created, under the act of February 20, 1903, and special assessments are made to pay the entire

cost of such improvement, the city is merely the agent or instrumentality for the collection and disbursement of the fund so collected, and is not liable for damages upon the contract for the construction of such works, where the officers fail to perform their duty.

(Syllabus by the court.)

APPEAL from the District Court of the Second Judicial District, for Latah County.  Hon. Edgar C. Steele, Judge.

An action for damages for failure to deliver bonds to sewerage contractor upon the completion of his contract.  Judgment for defendant.  Plaintiff appeals.  Judgment *affirmed.*

Stewart S. Denning, for Appellant.

In constructing sewerage systems, the municipal corporation acts not merely as an agent of the district, nor even in a purely public capacity for the public weal in the preservation of the public health, but, to some extent at least, in its capacity as a private corporation creating and acquiring a tangible property which becomes an asset of the municipality at large. (*City of Detroit v. Corey*, 9 Mich. 165, 184, 80 Am. Dec. 78; *Ostrander v. City of Lansing*, 111 Mich. 693, 70 N. W. 332; *Donahue v. Kansas City*, 136 Mo. 657, 38 S. W. 571, 573; 3 Abbott's Municipal Cor., sec. 957.)

The provisions of the statute, the ordinances and contracts do not contain any direct or express release of the city from such liability as that which lies at the foundation of this case. The weight of authority clearly sustains the doctrine of such general liability where the default is of the nature, the work of the character, and the statutory authority similar to that involved here.  (*Hitchcock v. Galveston*, 96 U. S. 341, 24 L. ed. 659; *Barber Asphalt Co. v. City of Harrisburg*, 64 Fed. 283, 12 C. C. A. 100, 29 L. R. A. 401; *Bill v. City of Denver*, 29 Fed. 344; *Barber Asphalt Co. v. City of Denver*, 72 Fed. 336, 19 C. C. A. 139, and cases cited; *Denny v. City of Spokane*, 79 Fed. 719, 25 C. C. A. 164; *Reilly v. City of Albany*, 112 N. Y. 30, 19 N. E. 508, and cases cited; *Weston v. City of Syracuse*, 31 N. Y. Supp. 186, 82 Hun, 67; *McCann v. City of Albany*, 42 N. Y. Supp. 94; *Weston v. Syracuse*,

158 N. Y. 274, 70 Am. St. Rep. 472, 53 N. E. 12, 43 L. R. A. 678; *O'Hara v. City of Scranton,* 205 Pa. 142, 54 Atl. 713; *Knapp v. Mayor etc. of Hoboken,* 38 N. J. L. 371; *City of Dunkirk v. Wallace,* 19 Ind. App. 298, 49 N. E. 463; *City of Chicago v. People,* 56 Ill. 327; *Maher v. City of Chicago,* 38 Ill. 266; *Village of Park Ridge v. Robinson,* 198 Ill. 571, 92 Am. St. Rep. 276, 65 N. E. 104; *Lansing v. Van Gorder,* 24 Mich. 456; *Eilert v. Oshkosh,* 14 Wis. 586; *Allen v. City of Janesville,* 35 Wis. 403; *Miller v. City of Milwaukee,* 14 Wis. 642; *Kearney v. Covington,* 1 Met. (Ky.) 339; *Louisville v. Nevin,* 10 Bush, 549, 19 Am. Rep. 78; *City of Louisville v. Leatherman,* 99 Ky. 213, 35 S. W. 625; *City of Louisville v. Bitzer,* 115 Ky. 359, 73 S. W. 1115, 61 L. R. A. 434; *City of Covington v. Noland,* 28 Ky. Law Rep. 314, 89 S. W. 216; *Fisher v. St. Louis,* 44 Mo. 482; *Kiley v. City of St. Joseph,* 67 Mo. 491; *Ash & Gentry v. City of Independence,* 103 Mo. App. 299, 77 S. W. 104; *City of Leavenworth v. Mills,* 6 Kan. 288, 298; *City of Atchison v. Byrnes,* 22 Kan. 65; *Heller v. City of Garden City,* 58 Kan. 263, 48 Pac. 841; *Ft. Dodge Electric L. & P. Co. v. City of Fort Dodge,* 115 Iowa, 568, 89 N. W. 7; *Iowa Pipe & Tile Co. v. Callanan,* 125 Iowa, 358, 106 Am. St. Rep. 311, 101 N. W. 141, 67 L. R. A. 408; *Michel v. Police Jury,* 9 La. Ann. 67; *Argenti v. City of San Francisco,* 16 Cal. 256; *Commercial Nat. Bank v. Portland,* 24 Or. 188, 41 Am. St. Rep. 854, 33 Pac. 532; *E. K. Jones & Co. v. City of Portland,* 35 Or. 512, 58 Pac. 657.)

The duty of seeing that the city, or its officials, performed their duties was no part of the obligations which the contractor assumed. His obligation was to perform the work and furnish the material required under his contract, according to its plans and specifications. When he had done this, he had no duty remaining to discharge, and had the right to rely upon the express obligation of the city to issue the bonds in accordance with its covenant. (*Reilly v. City of Albany,* 112 N. Y. 30, 19 N. E. 508, and cases cited; *City of Atchison v. Byrnes, supra; Ft. Dodge Electric L. & P. Co. v. City of Ft. Dodge, supra; O'Hara v. City of Scranton, supra; Commercial Nat. Bk. v. City of Portland, supra; Barber Asphalt Co. v. City of Denver, supra.*)

Wm. E. Stillinger, for Respondent.

This court, considering the same question, in the case of *Blackwell v. Village of Coeur d'Alene*, 13 Ida. 357, 90 Pac. 353, clearly points out the remedy of the contractor and fixes the liability where it properly belongs. In any event, the claim and lien is a charge *in rem* only, and enforceable against the property, but not against the person. (*Blackwell v. Village of Coeur d'Alene, supra; German Savings Bank v. City of Spokane*, 17 Wash. 315, 47 Pac. 1103, 49 Pac. 542, 38 L. R. A. 259.) The statute which confers authority for making the improvement in question imperatively requires that the expense shall be borne by the abutting property through special assessment, and shall not become a public charge in any event. (*Pontiac v. Talbot Paving Co.*, 94 Fed. 65, 36 C. C. A. 88.) No general doctrine of municipal liability for mere nonfeasance in the failure or neglect of council or officers to perform a duty of the municipality can be extended to override *per se* the inhibitions expressed in this statute, and that the contractor must proceed by *mandamus* to enforce his claim. (*Fletcher v. City of Oshkosh*, 18 Wis. 228; *City of Greencastle v. Allen*, 43 Ind. 347; *Goodrich. v. City of Detroit*, 12 Mich. 279; *Reock v. Mayor*, 33 N. J. L. 129; *People v. City of Syracuse*, 144 N. Y. 63, 38 N. E. 1006; Elliot, Roads & S., 436, and note; Beach, Mod. Cont., 1191.)

STEWART, J.—On August 5, 1903, at a regular meeting of the city council of the city of Moscow, there was duly passed Ordinance No. 254, entitled "An ordinance providing for a general sewerage line system and sewerage disposal works for the city of Moscow, Idaho, for the use of the general public of said city of Moscow, Idaho, which said sewerage system is to be hereafter used by the general inhabitants of said city or district hereafter created. . . . ." The boundaries of the sewer district under this ordinance were coincident with and the same as the boundaries of the city of Moscow. A sewer committee was appointed, plans adopted, bids advertised for and a contract awarded to the plaintiff

on September 10, 1903. The contract in its opening reads as follows:

"This Agreement, made and entered into in triplicate this 10th day of September, A. D., 1903, by and between the City of Moscow, Idaho, through the President, styled by the laws of the State of Idaho, Chairman of the 'Sewer Committee' of said City, Bayard T. Byrns, and H. H. Robinson, Clerk of said Committee, party of the first part, and James C. Broad, of the City of Spokane, State of Washington, party of second part, Witnesseth."

The contract was signed as follows:

"CITY OF MOSCOW, IDAHO.
"By BAYARD T. BYRNS,
"The President, Styled by the Laws of the State of Idaho, 'Chairman,' of the 'Sewer Committee,' of said City of Moscow, Idaho.

"By H. H. ROBINSON,
"Clerk of said Committee.
"JAMES C. BROAD,
"Second Party Herein.

"Attest:
"GEO. G. PICKETT."

An assessment-roll, as provided in said ordinance, was duly made and filed with the clerk of said city. Appellant performed the work in accordance with the contract. The sewer committee examined the work of the plaintiff and accepted the same as completed, September 2, 1904, in accordance with the terms and provisions of the contract. The city failed and neglected to make payment as provided in said contract upon completion thereof.

Afterward, and on September 4, 1904, another contract was entered into by the same parties "for the construction, building and placing in operation of sewerage disposal works, at the terminal point of the sewerage system provided for" and authorized by Ordinance 254. An assessment-roll, as provided in said ordinance, was duly made and filed with the clerk of said city. Appellant performed the work in accordance with said contract. The sewer committee examined the

work of the plaintiff and accepted the same as completed, September 2, 1904, in accordance with the terms and provisions of the contract. The city failed and neglected to make payment as provided in said contract upon completion thereof.

On September 12, 1903, Ordinance No. 257 was passed, providing for the creation of a sewer district to connect with the general sewer district created by Ordinance No. 254, the boundaries of which were coincident with the boundaries of said city. The sewer committee prepared plans, maps and specifications, advertised for bids, and on April 4, 1904, entered into a contract with the plaintiff for the construction of said works. A contract was entered into in the same manner and signed in the same way as the first contract referred to in this opinion. An assessment-roll, as provided by said ordinance, was duly made and filed with the clerk of said city. Appellant performed the work in accordance with said contract. The sewer committee examined the work of the plaintiff and accepted the same, September 2, 1904, as completed, in accordance with the terms and provisions of the contract. The city failed and neglected to make payment as provided in said contract upon completion thereof.

On May 10, 1904, Ordinance No. 264 was passed by said city, creating a sewerage district, for the construction of certain sewers, which were to be a part of the sewerage system established by Ordinances 254 and 257. The sewerage committee prepared plans, maps and specifications in accordance with said ordinance, advertised for bids, and on June 7, 1904, entered into a contract with plaintiff in the same manner and signed in the same way as the first contract heretofore referred to. An assessment-roll, as provided by said ordinance, was duly made and filed with the clerk of said city. Appellant performed the work in accordance with the contract. The sewer committee examined the work of the plaintiff and accepted the same as completed, on September 2, 1904, in accordance with the terms and provisions of the contract. The city failed and neglected to make payment as provided in said contract upon completion thereof.

There is a provision common to all contracts, with reference to the payment of the contract price, that the same is to be made in the following manner, to wit: "By causing to be issued to said second party, as provided by the laws of the State of Idaho, in such cases made and provided and to be provided for by Ordinance of the said City of Moscow, Idaho, to be hereafter passed by the City Council of the first party, in an aggregate amount equal to the sum of [stating the amount of such contract] ——— Dollars, less the sums properly deducted under the terms of this contract, said bond to be payable in five years, payable in installments of equal amounts each year, and to bear interest at the rate of Five and One-half (5½) per cent per annum, said bonds to date from the date of the final completion of this contract, and said second party agrees to take and accept such bond as herein provided, at par and accrued interest, in payment of any and all sums due him under the terms of this contract; Provided, However, that the said first party reserves the right to make any and all payments under this contract, in lawful money of the United States of America, issuing such bonds aforesaid for such balance due or owing to the second party after the payment of such moneys; It is Further Understood And Agreed, that said first party shall levy a special tax or assessment, according to the provisions of the charter and ordinances of the said City and in accordance with the laws of the State of Idaho, in such cases made and provided, upon all the property mentioned and described in Ordinance [giving the number], and will with all reasonable diligence proceed to collect the same, and turn over and pay the sum so collected into the fund from which the bonds to be issued as provided herein are made payable.

"It Is Further Agreed, by and between the parties hereto, that the said first party is but an agent between the owners of the property to be assessed for said improvement, and the second party, and that said first party shall not be liable, except as provided by law, for said assessment fund or for any claims or demands whatever against such fund, except as trustee thereof, and that second party shall look on to such fund for payment for the performance of this Con-

tract, and shall have no claim or lien, except as provided by law, against said first party except from such fund. No liability of any kind shall attach to said first party by reason of the entering into of this contract, except as especially provided herein.''

There is no dispute as to the facts in this case or the findings of the court. It appears from the record that Broad completed his work under said contracts, and the same was finally accepted by the sewer committee appointed under the ordinances providing for such improvement on September 2, 1904. The sewer and assessment districts involved in the first three contracts were identical, and included all the property assessable for such purposes in the entire city. In other words, the boundaries fixed for said districts were the same as the city boundary. The fourth contract included only a portion of the territory embraced within the corporate limits of the city of Moscow. It will be seen that each of the contracts provided that the contract price was payable upon completion of the work according to the provisions of said contract. The record discloses that no payments were made upon the first three contracts until December 6, 1904, at which time $12,000 was paid, and on August 1, 1905, a further payment in the sum of $1,438.95 was made, and upon the latter date improvement bonds were issued for the remainder due upon the first three contracts. The bonds so issued were in form as provided by the contracts and ordinances, and were dated December 1, 1904, and bore interest from that date. The cash payments that were made, together with the amount for which bonds were issued, equaled the contract price as covered by the first three contracts. Upon the fourth contract a payment of $8,000 was made on December 6, 1904, and further payments made on January 24, 1905, and August 1, 1905, and on the latter date bonds were issued as provided in said contract for the balance due plaintiff less the cash payments. The bonds were dated December 1, 1905, and bore interest from that date.

Thus it will be seen that the respondent has paid the plaintiff in cash and bonds the full amount due him upon the several contracts referred to in this opinion. The con-

troversy between the parties arises out of the claim of the appellant, that he was damaged by reason of the fact that the respondent did not pay or deliver to him bonds at the time and of the date of the completion of said contracts. While the appellant accepted the amount paid and the bonds issued, he did so under protest, claiming and insisting that he was entitled to receive the payments as of the date of the completion of the work, and that the bonds should be dated as of that time and bear interest from such date. The trial court held that there was a breach of each of the contracts and that damages resulted therefrom as claimed by appellant, but held that in making the contracts, the municipal corporation acted only as an agent for the property holders in the districts, and incurred no obligations for the performance of the provisions of the contract to be performed by it, which would expose it to a liability for failure to so perform.

A solution of the questions involved in this case depends upon the construction to be given to the act of February 20, 1903 (Laws of 1903, p. 26). Sec. 1 of this act provides:

"In addition to the powers heretofore granted to cities, towns, or villages under the provisions of the laws of the state of Idaho now in force, cities, towns, or villages may by ordinances, by-laws, and under and by virtue of this act: First—Construct, build, or purchase, keep, conduct, and maintain a sewer system or sewerage disposal works therein, or elsewhere," etc. "And for that purpose may levy a special assessment on the lots and parcels of lands," etc., "as hereinafter provided, to pay the expenses thereof.

"But, unless a majority of the resident owners of the property subject to assessment for such sewerage system, or sewerage disposal works and improvements shall petition the council or trustees to make the same or have the same constructed, such improvements shall not be made unless three-fourths of all the members of such city council or trustees shall, by an affirmative vote, at a regular meeting, assent to and order the same."

This section clearly grants to cities and villages the power and authority, by ordinance, to construct a sewerage system

and sewerage disposal works. Sec. 2 of this act provides the method by which this power may be exercised, as follows:

"The power and authority given by section 1 hereof to construct and operate a sewer system and sewerage disposal works, and levy a special assessment therefor and issue and dispose of special improvement bonds therefor shall be exercised as hereinafter provided by three substantial taxpayers and *bona fide* residents of such city, town, or village, who shall be styled collectively the 'Sewer Committee.'" This section further provides: "That upon the completion of any work or contract, or contracts, made or entered into during the life of said committee, and upon the turning over of such work to the council or trustees, that in that event, the said committee to become null and void and of no further force and effect, *Provided, however,* That at any time thereafter, when the necessity exists a further committee may be appointed," etc.

Sec. 3 provides for the organization of the sewer committee and sec. 7 provides: "The chairman of the committee shall execute all written contracts on behalf thereof, and sign all orders for the payment of money authorized thereby." Sec. 12 provides for the manner of making assessment for such improvement, as follows:

"The assessment or cost of any sewerage work, or sewerage disposal works or improvements . . . . assessed upon all the lots or parcels of land fronting on all highways, streets, or alleys included within any sewerage improvement district as well as all lots or parcels of land situated therein, each lot or parcel of land being separately assessed for the full debt thereof in proportion to the benefits to the property to be benefited, sufficient to cover the total expense of such work of the construction of such sewer and sewerage disposal works."

It also provides for the hearing of objections and protests thereto, and for the enactment of an ordinance creating a local improvement district to be called "Local Sewerage Improvement District No. ———," which shall include all the property fronting on the street or streets, and all the lots or parcels of land included within the boundary lines of said

local sewerage improvement district as heretofore designated. This section further provides that such ordinance shall provide that the costs of such improvement shall be assessed upon all the property of such local sewerage improvement district and the manner of assessment, and provides that the city council or trustees may expend from the general fund for such purposes such sums as in their judgment may be fair and equitable in consideration of the benefits accruing to the general public by reason of such sewerage improvement. Subd. 11, sec. 12, among other things, provides as follows:

"Wherever the mayor, or council or trustees of any city, town or village shall under authority in them vested under any laws of this state, or this act, or the charter or ordinance of such cities, towns, or villages shall cause any sewerage work or improvement to be done under the provisions of this act, or the laws aforesaid, or any sewerage disposal works to be built or constructed thereunder, the expenses which is chargeable to the property within the limits and boundary lines of the sewerage district or any sewerage district formed, ordered or laid out under the provisions of this act they may, in their discretion, provide for the payment of the costs and expenses thereof by installments, instead of levying the entire tax for special assessment for such costs at any one time, and for such installments they may issue in the name of the city, town, or village, improvement bonds of the district, which shall be known and designated as 'Special Assessment Sewerage Improvement Bonds, District No. ———,' which shall include all property liable for assessment within the boundary lines of said improvement district. . . . . Such bonds may be issued to the contractor constructing or building such sewer system, or sewerage disposal works or other improvements connected therewith in payment thereof. . . . ." This section further provides: "When district bonds are issued under this act for improvement, the costs of which are by law charged by special assessment against specific property, the council, or trustees, or other authorized officer, board, or body shall levy special assessments each year, sufficient to redeem the installments of such bonds next thereafter maturing," etc.    Subd. 12, sec. 12 provides:

"Such bonds when issued to the contractor constructing said work or improvements in payment thereof, or when sold as above provided, shall transfer to the contractor, or other owner, or holder, of the right or interest of such city, town, or village in or with respect to every assessment and the lien thereby created against the property of the owners assessed shall not have availed themselves of the provisions of this act in regard to the redemption of their property, as aforesaid, shall authorize said contractor, and his assigns and the owners and holders of said bonds to receive, sue for and collect every such assessment embraced in any such bond by or through any of the methods provided by law for the collection of assessments for local improvements.

"And if the city, town, or village shall fail, neglect, or refuse to pay said bonds, or to properly collect any such assessments when due, the owner of any such bonds may proceed in his own name to collect such assessments and foreclose the lien thereof." Subdivision 15 of sec. 12 of this act provides:

"The holder of any bond issued under the authority of this act shall have no claim therefor against the city, town, or village by which the same is issued in any event, except for the collection of the special assessment made for the work or improvement for which said bond was issued, but his remedy in case of nonpayment shall be confined to the enforcement of such assessment. A copy of this subdivision shall be plainly written, printed or engraved upon the face of each bond so issued."

Sec. 13 of this act, among other things, provides that all sewerage improvement shall be done under the supervision of the sewerage committee who are authorized to receive payments for the construction and making of same, and enter into such contract or contracts as may be necessary to have such work or improvements completed, etc. Then follow provisions of the statute with reference to the sewerage committee turning over to the city the sewerage works when completed and the passing of ordinances by the city with reference to operating the same, and the fixing and collection of tolls and rents therefor.

In determining the question at issue in this case we must keep in mind the various provisions of the statute with reference to sewerage improvement and the manner of paying therefor, and the liability created for such improvement, as well as the terms and provisions of the contracts, for a breach of which the appellant sought to recover in this action. Subd. 15 of sec. 12, quoted above, clearly limits the right of claim or action of a contractor for a sewerage improvement to the specific fund, realized from the special assessment authorized by such act and made by the city authorities of the city where such improvement is made. The remedy of the bondholder in case of nonpayment is limited to the enforcement of the special assessments made for the payment of such bond. This theory of limiting the indebtedness, to be incurred for sewerage improvement to a fund raised by a special assessment is found to run throughout the provisions of this act. For illustration: In sec. 1 it is provided: "And for that purpose may levy a special assessment on the lots and parcels of lands," etc., . . . . "to pay the expenses thereof." Sec. 12 provides:

"The assessment or cost of any sewerage work, or sewerage disposal works or improvements . . . . assessed upon all the lots or parcels of land . . . . for the full debt thereof in proportion to the benefits to the property to be benefited, sufficient to cover the total expense of such work of the construction of such sewer and sewerage disposal works." Subd. 11 of sec. 12, among other things, provides: "provide for the payment of the costs and expenses thereof by installments, instead of levying the entire tax for special assessment for such costs at any one time, and for such installments they may issue in the name of the city," etc. . . . . "When district bonds are issued under this act for improvement, the costs of which are by law charged by special assessment against specific property, the council, or trustees, or other authorized officer, board, or body shall levy special assessments each year, sufficient to redeem the installments of such bonds next thereafter maturing." Subd. 12, sec. 12, provides, that when the bonds are sold, they transfer to the contractor, or other owner, the right or interest of the city "in respect to every assess-

ment, and the lien thereby created against the property of the owners assessed . . . . ,'' and shall authorize the contractor or his assigns or ''the owners and holders of said bonds to receive, sue for and collect every such assessment,'' etc.

There would seem to be no question but what the legislature intended that all expenses to be incurred or incurred in the construction of sewerage works must be paid for out of a fund arising from special assessments. While it is true that the proviso to subd. 2, sec. 12, of the act under consideration provides ''that the city council or trustees may expend from the general fund for such purposes, such sums as in their judgment may be fair and equitable in consideration of the benefits accruing to the general public by reason of such sewerage improvement,'' this, however, leaves it entirely discretionary with the city to pay a part of the expense for sewerage improvement out of the general fund. This proviso, however, does not make any part of such improvement an obligation of the city, unless the city in some way authorizes the same. Counsel for appellant, however, argue that the city contracted to pay the appellant the amount due upon his contract at its completion, or deliver to him bonds for the amount due him. This contention cannot be sustained. As shown above, the statute provides for the creation of a sewer district and the appointment of a sewer committee to control the management thereof during the time such works are being constructed, and sec. 7 of the act says: ''The chairman of the committee shall execute all written contracts on behalf thereof, and sign all orders for the payment of money authorized thereby.''

Under this act the contract for sewerage improvement is made with the sewerage committee, appointed under the provisions of this act and the ordinances creating such sewer district. It is not an obligation or contract of the city. While it is true in this case that in the opening statement of the contract it says: ''By and between the City of Moscow, Idaho, through the President, styled by the laws of the State of Idaho, Chairman of the 'Sewer Committee' of said City,'' etc., still the fact that the contract so says does not make the

city one of the contracting parties because the statute specifically says that the contract must be made with the sewerage committee. The contracts made with the appellant must be construed in the light of the law, as the law became a part of such contracts. An examination of the contracts entered into discloses the fact that the parties to such contracts attempted to fix their respective obligations, as provided in the statute now under consideration, for in such contracts we find this provision:

"And it is further agreed, by and between the parties hereto, that the said first party is but an agent between the owners of the property to be assessed for said improvement and the second party, and that said first party shall not be liable, except as provided by law, for said assessment fund or for any claims or demands whatever against said fund, except as trustee thereof, and that the second party shall look on to such fund for payment for the performance of this contract, and shall have no claim of lien, except as provided by law, against said first party, except from such fund. No liability of any kind shall attach to said first party by reason of the entering into of this contract, except as especially provided herein;

"Provided, However, that nothing herein contained shall be construed to relieve the first party from liability for any portion of the cost of said improvement, if any, for which said City might be liable."

From this provision of the contract we perceive that the parties looked upon the contract as being made for the district, and clearly stipulated that the city was to act only as agent for the distribution and payment of the fund arising from the special assessment made against the property affected by such sewerage works. The contractor agreed that he should have "no claim of lien, except as provided by law, against said first party, except from such fund. No liability of any kind" would "attach to said first party by reason of the entering into of this contract." By this provision the parties to this contract evidently had in mind the provisions of the statute to the effect that the consideration for this public work was to be collected from special assessments. There is

nothing in the contract which shows that the city made any appropriations or declared by ordinance that any part of the cost of this public improvement should be paid from the general fund of said city.  It appears throughout that the parties had in view that the payment for the improvement should be made wholly out of a special fund created by levying a special tax against the property affected.  So it would seem that the statute not only contemplates that the cost of the improvement must be paid from a special fund created by special assessment, but that the parties contracted with that in view, and to the effect that the contract price should be paid from such special fund, and that the contractor should have no claim whatever against the city for any part of the contract price.   In the case of *Blackwell v. Village of Coeur d'Alene,* 13 Ida. 357, 90 Pac. 353, this court held:

"Under the provisions of the sewer improvement act of February 24, 1905, where warrants or bonds are issued for the payment of the assessments levied in pursuance of the act, there is no city liability whatever for the payment of such warrants or bonds, and the warrant or bond holders must look exclusively to the assessment so levied and the real property held as a lien for the payment of the same."

The act of 1905 referred to in that opinion is the same as the act of 1903 now under consideration.   In the case of *McGilvery v. City of Lewiston,* 13 Ida. 338, 90 Pac. 348, this court held that obligations, required to be paid out of special assessments levied against the property particularly benefited, are not an indebtedness or liability within the contemplation of the constitutional provision which limits the liability to be incurred by a city without a vote of the people.  In other words, where a contract is made, which is to be paid out of a particular fund arising from special assessments levied against property within the district, the liability becomes a liability *in rem* against the property, and not against the person or municipality.

Counsel for appellant cite many authorities in support of their contention, and clearly show the conflict in the authorities upon the particular question involved in this case.   They also attempt to distinguish the question discussed in the vari-

ous authorities, for the purpose of showing their application or nonapplication to the question involved in this case. Among the cases cited and discussed are the following: *Hitchcock v. Galveston*, 96 U. S. 341, 24 L. ed. 659; *Peake v. New Orleans*, 139 U. S. 342, 11 Sup. Ct. 541, 35 L. ed. 131; *Barber Asphalt Co. v. City of Harrisburg*, 64 Fed. 283, 12 C. C. A. 100, 29 L. R. A. 401; *Barber Asphalt Co. v. City of Denver*, 72 Fed. 336, 19 C. C. A. 139; *Denny v. City of Spokane*, 79 Fed. 719, 25 C. C. A. 164; *Reilly v. City of Albany*, 112 N. Y. 30, 19 N. E. 508; *O'Hara v. City of Scranton*, 205 Pa. 142, 54 Atl. 713; *Knapp v. Mayor and Council of Hoboken*, 38 N. J. L. 371; *City of New Albany v. Sweeney*, 13 Ind. 245; *City of Greencastle v. Allen*, 43 Ind. 347; *Wren v. City of Indianapolis*, 96 Ind. 206; *Board of Commissioners v. Fullen*, 111 Ind. 410, 12 N. E. 298; *Quill v. City of Indianapolis*, 124 Ind. 292, 23 N. E. 788, 7 L. R. A. 681; *Porter v. City of Tipton*, 141 Ind. 347, 40 N. E. 802; *City of Dunkirk v. Wallace*, 19 Ind. App. 298, 49 N. E. 463; *City of Chicago v. People*, 56 Ill. 327; *Goodrich v. City of Detroit*, 12 Mich. 279; *Lansing v. Van Gorder*, 24 Mich. 456; *City of Louisville v. Hyatt*, 5 B. Mon. (Ky.) 199; *City of Louisville v. Bitzer*, 115 Ky. 359, 73 S. W. 1115, 61 L. R. A. 434; *Fisher v. St. Louis*, 44 Mo. 482; *Thornton v. City of Clinton*, 148 Mo. 648, 50 S. W. 295; *City of Leavenworth v. Mills*, 6 Kan. 288; *Fort Dodge Electric L. & P. Co. v. City of Fort Dodge*, 115 Iowa, 568, 89 N. W. 7; *Argenti v. City of San Francisco*, 16 Cal. 255; *Commercial National Bank v. Portland*, 24 Or. 188, 41 Am. St. Rep. 854, 33 Pac. 532; *Johnson v. Common Council of City of Indianapolis*, 16 Ind. 227.

We shall not consume the space necessary to review all of these authorities, but refer to two recent cases where the authorities are collected and reviewed at length. In the case of *City of Pontiac v. Talbot Paving Co.*, 94 Fed. 65, 36 C. C. A. 88, in discussing this question the circuit court of appeals of the seventh circuit holds:

"A contractor for the making of public improvement in an Illinois city, governed by the city and village act [which is the Star T. C. & S. D.], which provides that all persons taking such contracts, who agree to be paid from special assess-

ments, shall have no claim or lien upon the city or village in any event, except from the collection of the special assessment made for the work contracted for, and whose contract provided that he should make no claim against the city in any event, except from collections, and should take all risk of the invalidity of the special tax, cannot maintain an action against the city for a general judgment on the ground that its officers failed or refused to levy a second assessment after the first had been held invalid by the supreme court of the state, but is confined to his remedy to compel the officers to perform their duty.''

In the case under consideration the statute and the contract clearly provide that the contractor must look to the fund out of which the contract is to be paid, and that the city is to be considered and recognized as the mere agent for the purpose of collecting such fund. If, then, the city of Moscow failed to pay the plaintiff at the completion of his contract, and failed to deliver him the bonds which were his due under the terms of his contract, his remedy was against the officers to compel them to perform their duty; that is, to pay him his due and deliver to him the bonds he was entitled to under his contract. The supreme court of the state of Washington, in *German-American Savings Bank v. City of Spokane*, 17 Wash. 315, 47 Pac. 1103, 49 Pac. 542, 38 L. R. A. 259, reviews extensively the conflicting authorities upon this question, and summing up their conclusion hold:

''From our investigation of the cases and text-books, we are of the opinion that the decided weight of authority is against allowing a recovery of the city upon such matters at all, in the absence of an express lawful contract to that effect, or in cases where the money has been collected on the assessments, and is in the city treasury. However, it is not necessary to go that far in this case, at least at this time. But we desire to reaffirm the doctrine laid down in *Stephens v. City of Spokane*, 14 Wash. 298, 44 Pac. 541, and 45 Pac. 31, that there can be no recovery of the city at all while the assessment plan can be enforced in any way.''

If the plaintiff could maintain this action for damages, because the officers of the defendant failed to do their duty, then

an indebtedness might be created against the city, which the statute says must be raised by special assessments, only, against the property benefited. In other words, if this suit can be maintained, then the plaintiff has done indirectly what the statute says cannot be done directly, and the mere fact that the officers have failed to do their duty and the plaintiff has taken no steps to compel them to do that which they have agreed to do, and which they are authorized to do under the statute, will not give him the further remedy of subjecting the city to damages by reason of the fact that they have not performed their duty. As said by Judge Seaman in *Pontiac v. Talbot, supra;*

"We are clearly of opinion that no general doctrine of municipal liability for mere nonfeasance in the failure or neglect of council or officers to perform a duty of the municipality can be extended to override *per se* the inhibitions expressed in this statute, and that the contractor must proceed by *mandamus* to enforce his claim."

From the various provisions in this statute it would seem that the legislature intended to make the city the mere instrumentality for the collection and disbursement of the funds arising from the special assessments. Throughout the statute it clearly indicates that it was intended to create an indebtedness against the property alone, and to limit all liens and claims to the property benefited by such improvement. The city or village is made the agent of the district to collect and apply the funds assessed, to the discharge of the expense incurred in making such improvement. The obligation is an obligation of the property, not an obligation of the city or municipality. The contractor and bondholder is limited to the property for the purpose of realizing the amount due to such contractor and bondholder. The duties of the city in relation to the improvement and the fund to be collected from the property and the duty of the officers of such city clearly appear from the various provisions of the act, and if the city or the officers of the city, whose duty it is to act, neglect or fail to perform the duties imposed by this law, then the remedy of the contractor or bondholder is against such officers for the purpose of compelling them to act, but the indebtedness can-

not be taken away from the property benefited, and fixed against the property generally of the city.

If a general judgment could be obtained against the city, then to the extent of such judgment there would be an increased debt above the expense of the improvement which the property must pay. We think it clearly appears from the entire act that the legislature intended to inhibit the creation of any municipal indebtedness and to limit all claims for such improvement to the property affected. From this discussion it follows that the failure of the city to pay the contract price, either in cash or bonds, would not subject the city to damages, but the contractor or bondholder would be relegated to the remedy clearly indicated by the statute of an action to compel the officers of such city or village to perform such duty, as the act requires. We are therefore of the opinion that the judgment of the trial court was right. The judgment is *affirmed.* Costs awarded to respondents.

Ailshie, C. J., and Sullivan, J., concur.