## CITY OF EL PASO v. WEST et al.*
### No. 8859.

Circuit Court of Appeals, Fifth Circuit.
April 6, 1939.

Ernest Guinn, Joseph G. Bennis, and Coyne Milstead, all of El Paso, Tex., for appellant.

Eugene R. Smith and Maury Kemp, both of El Paso, Tex., and Robert G. Bosworth, of Denver, Colo., for appellees.

Before SIBLEY, HOLMES, and Mc-CORD, Circuit Judges.

SIBLEY, Circuit Judge.

The facts are in no substantial dispute. The City of El Paso and the property owners on certain of its streets wished to pave the streets. Bonds could have been issued by the City, or by a special improvement district, if authorized by an ·election therein, but under the Texas Constitution no debt could be created without having laid a tax to pay it. Vernon's Ann.St.Tex. Const. art. 11, § 5. Instead of following any of these plans, by virtue of charter powers which were supposed to authorize it it was determined that the City should contract for the paving so that it should pay cash for the street intersections, and the cost of the other paving should be assessed on the front foot plan against the abutting property and its owners, being a personal charge on them and a lien on the property, and that the balance owing the contractor should be paid by delivering to him these assessments. Such assessments would be in various irregular amounts, and would be difficult of resale by the contractor. He suggested that a more favorable bid could be made if the City would pool these assessments and issue against them special certificates payable to bearer, for sums of $500 or $1,000 due serially, with interest coupons attached, and suggested a form of ordinance, which after some change was passed by the City. The ordinance provided that the City be empowered to receive, collect and enforce such assessments, that the Assessor-and-Collector of

*Rehearing denied — F.2d —.

City taxes be under duty to collect them, and to pay the collections over to the City Treasurer, who should place them in a special fund to be used only for the payment of principal and interest of the certificates; and that the Treasurer, when having enough on hand to pay so much as a thousand dollars, should notify the contractor or other holder of certificates who had requested it and publish a notice in a stated newspaper, and pay them in order. If an assessment should become delinquent, the Assessor-and-Collector was required to notify the lot owner in writing and after thirty days the assessment was to be referred to the City Attorney for collection. If property was offered for sale and not bid for, the City should be under duty to bid it in and later dispose of it and put the proceeds into the special fund. The certificates were to be payable on or before eleven years from date and exclusively from the special fund, and the form enacted by the ordinance contains these words: "For the payment of this certificate the City of El Paso has created the City of El Paso Special Paving Fund and has obligated itself to collect and enforce all special assessments levied to pay for said improvements and to deposit in said fund all receipts derived from such special assessments, and to pay this certificate out of such receipts and such fund in the manner provided by the ordinance under which this certificate is issued." This general ordinance was followed by special ordinances for particular paving projects which assessed the abutting properties, and declared the assessments to be a personal liability and a lien on the several properties. The assessments were made due thirty days after the completion of the work, but at the owners' election, to be manifested by failure to pay in said thirty days, were to be spread in ten equal annual instalments bearing interest at 8%. Default in paying any instalment made all at once due. All the work here involved was completed by May 1, 1923. About $473,000 of assessments remained unpaid after thirty days. Against them $470,000 of special certificates were issued and delivered to the contractor who sold them to others. Interest on them was promptly paid and matured principal up to Aug. 1, 1931, when default occurred. On enquiry the City officials stated that owing to the general depression collections had fallen off but they hoped for improvement. The last principal fell due in 1933. I. Anson West,

Trustee, holding certificates for a principal sum of $174,000 filed suit in the District Court on July 31, 1934. Norman A. Hutchinson, having certificates for a principal of $19,000, filed an intervention on July 19, 1935. Over the City's defenses which will be later referred to they obtained general judgments for damages against the City equal to the principal and interest due on their certificates. The City appeals.

■ One of the City's defenses is limitation of two years. To test its applicability the cause of action asserted is important. The so-called intervention is not an intervention, but a parallel suit framed just like the original suit, and seeking identical relief, and making no reference to the original suit or any dependence on it. The allowance of it as an intervention amounts only to a consolidation for trial. Both suits are at law, praying only money damages. Neither appeals to equity to treat the City as the trustee of a fund and to hold it to an account of what it has or ought to have in hand. They are not suits for failure to provide the assessments promised. The Court held each to be "an action for recovery of damages in tort * * * for recovery of loss and damages occasioned by negligence * * * in failure to collect and take steps to collect and enforce collection of assessments and liabilities against owners of real estate abutting on streets paved." The briefs for both parties so interpret them. There are two counts. In the first the negligence alleged is allowing the assessments to become barred by limitation, and their lien lost by a sale of the lands for general taxes. In the second count it is alleged that $114,000 of the collections of principal had negligently been applied to pay interest coupons, that $110,-561 of the principal of assessments negligently remained uncollected. The suits are not upon the certificates as contracts, the promises in them being relied on only as raising the duty diligently to collect the assessments and apply the proceeds. Thus viewed it appears that the two year limitation of Revised Statutes of 1925, Art. 5526, applies. A suit against the State Treasurer for negligence in performing a duty was held not to be a suit on his bond, but barred in two years, in Hatcher et al. v. State, 125 Tex. 84, 81 S.W.2d 499, 98 A.L.R. 1213. The limitation begins to run on the accrual of the cause of action. If the City had money in the special fund

and the suit were on the promise to pay, the cause of action would arise on the failure to pay at the maturity of the certificate, and the period of limitation would be different. But here the suit is for negligent acts which are claimed to have caused injury by destroying the fund little by little. Each act of negligence thus causing damage gave rise to a cause of action when it occurred. That the certificate holders were not aware of it makes no difference. One may often lose a cause of action by limitation without ever knowing he had it. Laying aside equitable notions of a trust which were not here invoked, the City stood much as an agent to collect, like an attorney at law. That an attorney should allow a claim in his hands to become barred is negligence for which he may be liable (5 Am.Jur. Attorneys at Law, §§ 130, 137), but the cause of action arises and limitation begins to run when his negligence results in the barring of the claim, and not when the client finds it out and demands satisfaction. 37 C.J., Limitation, § 179 and cases cited; 17 R.C.L., Limitation, §§ 132–134. Assuming that the assessments were validly made payable in instalments, a detailed schedule of them shows that defaults at once began in paying the instalments so that nearly all the assessments now unpaid were in default by June 1, 1930. All instalments thereupon were due, without option or other condition. The limitation on their enforcement is two years, as all agree. Therefore by June 1, 1932, all these assessments were barred. The plaintiff's rights of action which arose out of the negligence in not enforcing each were all barred two years later or by June 1, 1934. West did not sue till July 31, 1934, and Hutchinson till July 19, 1935. Limitation thus disposes of almost the whole case.

■ There was no proof and no finding of loss by property being allowed to be sold for general taxes, nor of any wrongful diversion of money from the fund. The use of collections of principal to pay interest coupons was no diversion if it occurred. The fund, whether composed of principal or interest collected on the assessments, was applicable to pay both principal and interest coupons of the certificates as they fell due. There was evidence of some losses by compromise of assessments, but that was not sued for, even if negligent, and if within the City's authority.

■ The case is thus narrowed to a consideration of negligence in allowing the few assessments to become barred which became in default after June 30, 1930, in West's suit and after June 18, 1931, in Hutchinson's suit. There is no evidence specially concerning these assessments. If there was negligence as to them the damage to the plaintiffs could not have exceeded the real value of these assessments, prorated to the outstanding certificates. The judgment rendered is wrong, and this being a law case we are not in position to make a different one. A new trial must be had.

■ The most discussed defense of the City is that it had no power to make the assessments payable in instalments or to issue the certificates and undertake for ten years to administer the assessments to pay them. Because a part of the negligence sued for is unbarred, we must consider this defense. The City derives its powers from a special Charter granted by the Legislature in 1907, Sp.Acts Tex.1907, c. 5, and from the Home Rule Amendment of the Constitution in 1912, Vernon's Ann.St.Tex. Const. art. 11, § 5, followed by other legislation and by amendments made by the voters of the City under authority of the Constitution. We find ample specific authority to improve and pave the streets as was done, but the Charter provides that the assessments fall due on completion of the work and there is no special provision for allowing them to be extended in instalments, and no provision for the City to issue special certificates against them instead of assigning the original certificates of assessment to the contractor. In so far as these arrangements convenienced the property owners and the contractor and his assigns, they seem useful and if not permitted to create financial burdens on the City they are harmless. The Texas Legislature (Vernon's Ann.Civ.St.Tex. art. 835d), sanctioned such a procedure by large cities, but the Act was held invalid because it required the City to make good, subject to reimbursement, any shortage in collections of assessments to meet maturing certificates and interest. City of Fort Worth v. Bobbitt, Atty. Gen., 121 Tex. 14, 36 S.W.2d 470, 41 S.W.2d 228. The El Paso plan, though not itself imposing on the City any duty of supplementing collections has in the judgment under review led to a general liability to pay the defaulted certificates. We are much impressed by what was said

in Peake v. New Orleans, 139 U.S. 342, 11 S.Ct. 541, 35 L.Ed. 131, touching the limiting of relief in such a case to a mandamus against the officers to compel action in collection. Mandamus was held to be the remedy in Pontiac v. Talbot Pav. Co., 7 Cir., 94 F. 65, 48 L.R.A. 326. See also State ex rel. Southern Surety Co. v. Armstrong, 158 Okl. 290, 13 P.2d 198; Broad v. Moscow, 15 Idaho 606, 99 P. 101. In Moore v. City of Nampa, 9 Cir., 18 F.2d 860, affirmed 276 U.S. 536, 48 S.Ct. 340, 72 L.Ed. 688, on narrower grounds, much authority is cited to show that where there is no direct liability on the municipality and it is collecting assessments which alone are the fund for payment, its officers act not for it, but as special agents for a public purpose. But a contrary conclusion was reached in City of McLaughlin v. Turgeon, 8 Cir., 75 F.2d 402, with many cases cited to support it. The original Charter of El Paso, Section 2, gives very broad general powers "to enact and enforce any and all ordinances upon any subject", concluding: "It being intended by this act to grant to and bestow upon the inhabitants of El Paso full power of self-government, and it shall have and exercise all powers of municipal government not prohibited to it by this charter or by some general law of the State of Texas, or by the provisions of the Constitution of the State of Texas." These words probably are not to be taken quite at face value, but we do not feel authorized to overrule the District Judge in holding that they suffice to support the action of the City in offering the property owners an election to pay in instalments, and in offering certificate holders a diligent collection of them. While the ordinance lays specific duties on named City officers the City itself in its form of certificate "obligates *itself* to collect and enforce all special assessments." We uphold the ordinance, but we regard the question as of such doubtfulness as to make the possible invalidity of the instalment assessments an element to be considered in deciding whether or not it was diligence to defer making an issue by suing on them. It appears that the City Attorney advised against suit, though his reason was not testified to. An adverse decision on some one delinquent assessment might have upset them all.

The causes of action for negligence which were unbarred when suit was filed we direct to be retried, leaving open both the questions whether there was negligence and what if any damage was caused in each instance. The judgment is accordingly reversed and the cause remanded for further proceedings not inconsistent with this opinion.